HENRY W. CRITTENDEN v. THE PHŒNIX MUTUAL LIFE INSURANCE CO. AND MAY I. CRITTENDEN.

*Gift of insurance policy—Delivery.*

A gift of an insurance policy to be exchanged by the donor's assent for one drawn according to the donee's wishes, is sufficiently consummated by delivery when the policy is given to the donee, and then returned to be forwarded, by the assent of all and the donor's order, to the insurance company to be exchanged, and is exchanged accordingly without any intervening objection by the donor.

A father took out a policy of insurance in his own favor on the life of his minor son to whom he promised to give the policy at his majority. The son having married asked that it be given him before that time and made payable to his wife, and the father, acquiescing, delivered it to him. It was afterward returned to the father in order that he might have it changed so as to run to the wife, and he forwarded it through the local agent, with the request that it be changed accordingly. The company substituted a policy drawn in the wife's favor and sent it to the local agent who received it on or about the day the assured died and afterwards delivered it to the father, who retained it and filed a bill to enjoin the company from paying it to the wife. *Held* that the gift of the insurance was perfected

by the delivery of the policy, the order for substitution and the subsequent transfer by tho. company without objection; and that the bill would not lie.

Appeal from Calhoun. Submitted June 18. Decided October 8.

BILL to establish complainant's title to an insurance policy and to enjoin the company from paying it to its joint defendant. Complainant appeals.

*John C. Patterson* for complainant. Title by gift of a *chose in action* does not pass *inter vivos* without actual delivery or assignment, 2 Kent's Com., 438-9; *Hooper v. Goodwin*, 1 Swanst., 486; *Picot v. Sanderson*, 1 Dev. (N. C.), 309; *Dole v. Lincoln*, 31 Me., 428; *Carleton v. Lovejoy*, 54 Me., 445; *Hanson v. Millett*, 55 Me., 184; *Borneman v. Sidlinger*, 15 Me., 429; *Grover v. Grover*, 24 Pick., 261; *Wilson v. Carpenter*, 17 Wis., 512; *Sanborn v. Goodhue*, 28 N. H., 56; one who promises to give another an insurance policy can refuse to complete the gift at any time before delivery, *Noble v. Smith*, 2 Johns., 52; *Harris v. Clark*, 3 Comst., 113; *Tyler v. Tyler*, 8 R. I., 176; *Case v. Dennison*, 9 R. I., 88; a valid gift *inter vivos* must exist *in præsenti;* it cannot be *in futuro, Trough Estate*, 75 Penn. St., 115; a valid and complete gift of a life insurance policy cannot be made without the actual execution of an assignment or some equivalent instrument, and its delivery to the donee, *Lemon v. Phoenix Mut. Life Ins. Co.*, 38 Conn., 294; *Palmer v. Merrill*, 6 Cush., 286; *Bond v. Bunting*, 78 Penn. St., 210; *Brunn v. Markham*, 7 Taunt., 224; *Ward v. Turner*, 2 Ves. Sr., 433; *In re Campbell Estate*, 7 Penn. St., 100; *Withers v. Weaver*, 10 id., 391; *Kidder v. Kidder*, 9 Casey, 268; *Crawford' Appeal*, 61 Penn. St., 52; 3 Redf. Wills, 326-7, n. 21; a life insurance policy is a *chose in action* and capable of actual manual delivery, *Clark v. Allen*, 11 R. I., 439.

*Gibson & Parkinson* for defendant May I. Crittenden.

Delivery of a policy to the insurance agent to have it cancelled, extinguishes it, *Train v. Holland Purchase Ins. Co.*, Ins. L. J. (1877); when a policy is given up to have another substituted to run in the name of a new beneficiary, the latter's right attaches when the surrender of the old one is accepted and the new one is made out, and no delivery is necessary to enable it to be enforced against the company, Bliss Life Ins., 202, 206, 214, 496-7, 512, 574; May on Ins., 61; *Kentucky Mut. Ins. Co. v. Jenks*, 5 Port. (Ind.), 96; *Cooper v. Pacific Mut. Life Ins. Co.*, 7 Nev., 116; *Fried v. Royal Ins. Co.*, 50 N. Y., 250; *Jones v. Deyer*, 16 Ala., 221; *Continental Life Ins. Co. v. Palmer*, 42 Conn., 68; when a donee has actual possession nothing is necessary to constitute delivery but a relinquishment by the donor, *Tenbrook v. Brown*, 17 Ind., 410; *Winter v. Winter*, 9 W. R., 747; *Wing v. Merchant*, 57 Me., 383; *Green v. Langdon*, 28 Mich., 225; it is sufficient if the donee is to hold absolutely from that time, *Gillespie v. Burleson*, 28 Ala., 551; a delivery that vests an equitable title is enough, *Jones v. Deyer*, 16 Ala., 221. For cases similar to this, see *Chowne v. Baylis*, 31 Beav., 351; *Fortescue v. Barnett*, 3 Myl. & K., 36.

GRAVES, J. This case comes before the court by appeal from a decree dismissing complainant's bill.

The main facts are as follows: September 6th, 1870, complainant procured of the defendant corporation a policy in his favor for $2,000 on the life of his son, Charles H. Crittenden, who was then about fourteen years of age. The business was transacted through Mr. Bull, the agent of the company at Albion.

The complainant being a man of small fortune and not able to make much outlay from his own means, but perceiving that his son was capable, industrious and faithful, and desiring to give him aid and encouragement as far as practicable, at length assured him that he should have his own early savings on reaching twenty-one, and in addition should likewise have the policy of

insurance.    The amount of premiums in the meantime would not be large and a considerable portion at least would be derived from his efforts.    His minority would expire February 24th, 1878.

Under these circumstances the son in 1877, if not earlier, assumed possession of the policy and spoke of it as virtually his.    Complainant claims this was unauthorized.    June 20th, 1877, he married the defendant, May I. Crittenden, then May I. Newell.    When the fall of that year arrived and whilst he was still about four months under age, he had accumulated about $800.    At the same time he held a policy for $1,000.    But this he intended shortly to surrender, because he deemed himself unable to carry it.    He had told complainant he wished the policy for $2,000 made over to his wife, and complainant had replied that he would transfer it to whom he wished on his arrival at full age.

Becoming aware that she was soon to be a mother, and fearing that in case of his death under age his acquisitions might possibly be diverted from her, and that she might be dependent on the liberality or forbearance of others, he became anxious to have the promised and expected disposition of the policy brought about at once instead of being delayed until his arrival at majority in the coming February.    He advised with his mother about it and asked her if his father had made the change, and added: "I wish he would, for if anything should happen to me, May will not have *anything*, for pa can hold all I have, as I am not twenty-one."    His mother concurred in thinking it should be done and spoke to complainant about it, and the evidence is satisfactory that he then assented.    Indeed there is no room for doubting that there was a mutual agreement that the change desired by Charles should be made without delay.

Accordingly, near the close of October he took the policy to the agent and informed him that he wanted it transferred to his wife, the defendant May I. Crittenden, and the agent instructed him that as it was payable to

complainant the change could not be effected without his consent. This explanation having been obtained by Charles, the complainant himself called not long afterwards and told the agent that he desired to have the transfer made, and the agent informed him that in order to accomplish it, it would be necessary that his written request for the transfer should be sent with the policy to the home office in Connecticut, and that the change would be made by substituting a new policy payable to May I. Crittenden in the place of the old one payable to himself. The complainant was satisfied and at once executed the following order to be sent with the policy:

"ALBION, Oct. 30, 1877.

*Phœnix Life Insurance Company, Hartford, Conn.:*

You will please change policy No. 47068 so as to make same payable to May I. Crittenden, wife of Charles H. Crittenden.

Witness, ISAAC BULL.    HENRY W. CRITTENDEN."

The agent sent the policy and request forward, and on the 2d of November the company executed the request by superseding the old policy by a new one, payable to May I. Crittenden, and according to the usual practice of the company this new policy was forwarded direct to the general agent at Milwaukee who transmitted it to the local agent at Albion. It was received there between Tuesday, November 13th, and Friday night, the 16th. The inference is that it arrived at Albion before Friday, but the fact is not important. On the morning of Friday, the 16th, Charles died. No instructions had been given to the agent as to the person to whom the policy should be mailed or delivered. He testifies that he regarded himself as acting for complainant, and that therefore on being called on by him for the policy on Monday, the 19th, he gave it to him.

The insurance company has made no question, and is understood as being ready to pay the insurance to the party entitled.

The complainant contends that the occurrences in

question were intended to effectuate a gift, and that as the new policy was not delivered, the gift was not perfected, and he did not lose his right to the old policy.

The final object of the bill would seem to be to repudiate the steps to obtain the new policy in order to secure to himself the benefit of the old one. He founds his equity on his supposed right to withhold the new policy from his daughter-in-law and its consequent nondelivery. There was no fraud or mistake. The rights of creditors are not in question and the insurance company makes no complaint. The controversy is confined to complainant and his daughter-in-law, and he plants himself on his right to prevent the execution of an uncompleted gift.

Now the subject of the gift, assuming the transaction to have been no more than a gift, was the policy which complainant had taken and which was then in actual existence and had a specific value of its own, and not one he had not taken and which had not come into existence and might never do so. And this policy which was already in being and capable of delivery was delivered. By the assent of all it was put in Bull's hands for the benefit of young Crittenden and was not in any contingency to be returned to complainant. It was to be used by the young man to get a like policy payable to his wife, and in order that it might be so used the complainant gave the company the written request.

The deposit of the old policy in this way with the written order to the company gave young Crittenden the means to make the old policy available to himself in the mode he desired and in the mode agreeable to the will of both parties.

The complainant allowed the papers to go forward and allowed the company to act on his written request and to fully execute it without any objection. The old policy was extinguished and the new one was issued

and forwarded through the right channel for the benefit of the payee. Complainant could base no action on it nor found any claim against the company upon it. The transaction on the part of complainant was finished. In exact compliance with the design of all concerned the old obligation was consumed to provide a new one, and complainant had no right to the latter. In short it is a clear proposition that when the thing to be given is a third party's obligation and the transaction carried out includes its appropriation by the donor's assent to the donee's purpose by being exchanged or substituted for another obligation, or a different benefit in favor of the donee, or according to his appointment, there is necessarily a sufficient delivery as between the parties. It is contained in what takes place. The thing and all power over it is passed from the donor to the donee.

The complainant made out no case entitling him to relief and the decree below should be affirmed with costs.

The other Justices concurred.