---

(16 Misc. Rep. 137.)

### In re WACHTER'S ESTATE.

(Surrogate's Court, Cattaraugus County. February, 1896.)

1. GIFT INTER VIVOS—DELIVERY.

On an issue as to whether decedent had given to his daughter, who lived in his family, a horse and buggy, the widow, who was the administratrix, testified that deceased, three years before, gave the horse and buggy to the daughter, who worked for deceased in haying time; that the daughter took charge of the horse after deceased gave it to her, and when he used it he would call the daughter to hitch up her horse; and that all the stuff to keep the horse came from the farm. The daughter testified that she took sole charge of the horse, and drove it whenever she chose, without asking permission. Her two brothers testified that they had asked their father for the horse, and he always said that he had given it to the daughter. *Held* a sufficient delivery to constitute a valid gift inter vivos.

2. EXECUTORS AND ADMINISTRATORS—SUPPORT OF WIDOW DURING QUARANTINE.

A widow, during her quarantine, is entitled to her reasonable sustenance out of the estate of her husband, though an inventory of the estate has been made, and the statutory portion of the assets set off for the widow.

3. SAME—FUNERAL EXPENSES—MOURNING ATTIRE.

Expenses incurred by a widow in the purchase of mourning attire to attend the funeral of her husband are allowable out of the estate, as funeral expenses.

Judicial settlement of the accounts of the administratrix of the estate of Frederick Wachter, deceased.

N. M. Allen, for administratrix.

W. K. Harrison, for contestant.

DAVIE, S. The contestant seeks to charge the administratrix with the value of certain personal property—a horse and buggy, and a quantity of blacksmith tools—which, as is alleged, belonged to the intestate, and are not accounted for. It is asserted on behalf of the administratrix that the intestate, prior to his death, had parted with the title to this property; that he had given the horse and buggy to his daughter, Julia, and the blacksmith tools to a son. The evidence clearly shows a design on the part of the intestate of making such gifts, and an express declaration thereof. The gifts were fully consummated, so far as the mere words of gift are concerned. The only question which arises is as to whether or not there was such a delivery of the property sought to be given as the law requires in order to constitute a valid gift inter vivos. The horse and buggy in question were kept upon the farm occupied by the intestate and family. The daughter, Julia, had always resided at home, and, at the time of the alleged gift, was a minor. The administratrix testified that:

"Deceased gave the horse and buggy to Julia when she was nineteen years old. That was three years ago last November. She worked for the deceased in haying. Julia always took charge of the horse after deceased gave it to her. After deceased gave the horse and buggy to Julia, he used it some, but would call on Julia to hitch up her horse. Did that some before he gave it to her, but not so much. The stuff to keep the horse on all came from the farm."

The daughter, Julia, testified:

"I used to take care of the horse, and hitch it up and drive it, for several years. Deceased drove it more or less. There came a time when I took care of the horse exclusively. That was for two months before father died. I drove whenever and wherever I chose, without asking permission."

The witness Dennis Wachter testified:

"I heard the deceased say that my sister was the one who owned the horse. He said that when I asked him for it. He told me to ask her for it."

Frank Wachter testified:

"I asked him [the intestate] for the horse, and he told me it belonged to Julia; that he had given it to her; that she had always helped him through haying, and he had made her a present of it."

This was substantially all the evidence bearing upon the question of the making of the gift and the delivery.

It is undoubtedly the law that, in order to constitute a valid gift, there must be a delivery of the property with the intention to give. The donor must part with the dominion and control of the thing be-

fore the gift can take effect. Mere words of gift alone are not sufficient, and are not the basis of any action. Martin v. Funk, 75 N. Y. 134; Gray v. Barton, 55 N. Y. 68. The nature of the delivery must, however, necessarily depend to some extent upon the character of the thing given, and the relative situation of the parties. Where the articles are numerous, and not susceptible of actual manual delivery, a symbolical delivery is sufficient. 8 Am. & Eng. Enc. Law, p. 1315. In one case it was held a sufficient delivery to constitute a valid gift to a married woman of household furniture in the possession of herself and family, where one who had just purchased under a chattel mortgage made by her husband, pointing out certain articles to the wife, said, "I give you these, and all the property I have this day purchased," and that such property remaining, after the gift, in the house occupied by the husband and wife together, was to be deemed in the possession of the wife. Allen v. Cowan, 23 N. Y. 502. In a case where a father had purchased a lottery ticket which he declared he gave to his infant daughter, and wrote her name upon it, and, after it had drawn a prize, declared he had given the ticket to the child, it was held that the prize money was hers. Grangiac v. Arden, 10 Johns. 293. In another case the plaintiff and her brother lived with their father, on his farm. The brother, on account of the infirmities of the father, had the whole management of the farm, and provided for the common household. The carriage in question was kept in the carriage house when not in use. The father called the members of the family together, and, in the presence of all, gave the carriage to the plaintiff, requesting all to witness the gift. The brother afterwards took the carriage, claiming that the father had given it to him; and it was held that if there was, under the facts of the case, a declaration of a gift, in plain terms, and a surrender and acceptance of dominion, it was a sufficient delivery. Fletcher v. Fletcher, 45 Am. Rep. 627, note. See, also, case of Penfield v. Thayer, 2 E. D. Smith, 305. After the gift is made complete, it is not necessary that the donee retain the possession of the property. The subsequent possession by the donor, while it may throw suspicion on the transaction, as being a fraud against creditors, if satisfactorily explained, will not divest the donee of the title to the property, when it has once been lawfully acquired by him. 8 Am. & Eng. Enc. Law, p. 1317. Under all the facts disclosed by the evidence, it is entirely apparent that the intestate designed to give the property in question to the daughter; that he subsequently recognized her control and dominion over it; that she did exercise acts of ownership over the property. There is no evidence that the intestate ever made any claim to the property after the gift to the daughter. Consequently, it seems quite clear that it should be held that the daughter's title to this property had become perfected, and was in all respects valid. The authorities above cited, and the conclusion reached, are entirely applicable to the transaction between the intestate and his son regarding the blacksmith tools. The making of the gift and the assumption of dominion on the part of the donee, in this instance, are quite clearly established. Conse-

quently, the administratrix should not be charged with the value of any portion of this property.

In the account filed the administratrix charges the estate with the expense of her maintenance during the 40 days immediately following her husband's death; also, with the amount expended by her in the purchase of mourning apparel for herself and minor daughter. These charges are objected to. An inventory of the personal estate of the deceased was made and filed, and the portion of the assets to which the widow was entitled properly set off to her, including such family supplies as were on hand at the time. It is claimed on the part of the contestant that the widow's right of support during her quarantine should be limited to the property so set apart to her. This claim is not sustained by the authorities. The widow is entitled to her reasonable sustenance out of the estate of her husband during her quarantine, by the express provisions of the statute. 4 Rev. St. (8th Ed.) p. 2456, § 17; Johnson v. Corbett, 11 Paige, 265.

A more novel and peculiar question, however, arises in relation to the expense incurred by the widow in the purchase of mourning attire. No claim is made that such expense was unreasonable, considering the extent of the estate. So the abstract proposition arises as to whether or not a reasonable expenditure for mourning apparel for the widow and minor daughter should be regarded as a legitimate part of the funeral expenses. Reasonable funeral expenses are always regarded as a proper charge against the estate, but does the term include an expenditure for the purpose indicated? The term "funeral" embraces, not only the solemnization of interment, but the ceremonies and accompaniments attending the same. Such ceremonies are prompted by affection, and their character is, to some extent, determined by the religious faith and sentiment of the friends of the deceased; their extent and magnitude depending upon the condition of the estate, and the station in life which had been occupied by the deceased, varying from the simple bier to the imposing catafalque, from the informal liturgical service or scriptural reading for the humble to the elaborate oraisons funebres attending the obsequies of the renowned. The wearing of suitable mourning apparel is commonly regarded not only as a proper, but almost indispensable, mark of affection and evidence of grief. The distribution of a decedent's estate among his next of kin without providing therefrom for the usual and conventional ceremonies in memory of the dead would seem, not only parsimonious, but utterly repugnant to one's conception of justice and propriety. In re Allen's Estate, 3 Dem. Sur. 524, this same question was considered, and an expenditure of this character allowed from the estate, and I am of the opinion that the conclusions reached in that case were entirely right.

A decree will be made and entered judicially settling the account of the administratrix as filed. Ordered accordingly.