WILLIAM SCRIVENS *vs.* NORTH EASTON SAVINGS BANK, EDWARD J. BARRY, executor, claimant.

Bristol.   March 10, 1896. — May 25, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Gift inter Vivos.*

A. deposited money in a savings bank, and, being unable to sign his name, the treasurer of the bank wrote in the books of the bank " A. $\overset{\text{his}}{\times}$ , in trust for B., $_{\text{mark}}$ payable in case of my death to B." A. also stated to the treasurer that he wanted his son to have it after his death. B., who was A.'s son, testified that, about four months after making the deposit, A. told him to take the book, saying somebody might take it, and that he should take it, and his own, and give it to B.'s niece; that B. took it, looked it over, and saw what it was, and said that he would leave it there until it was called for; and that he left it with his father until he died; that B. knew it was there for him; that his father reserved the right to draw what he saw fit, though B. knew that he would draw only a little at a time; and that his father told him that he could have the money when he wanted it. *Held,* that the jury were justified in finding that this constituted a valid gift *inter vivos.*

CONTRACT, to recover money deposited by William Scrivens, Senior, with the defendant bank. Edward J. Barry intervened as a claimant of the fund, under St. 1894, c. 317, § 33.

At the trial in the Superior Court, before *Hammond,* J., the treasurer of the defendant savings bank testified that on November 26, 1890, William Scrivens, Senior, personally made a deposit at the banking-room in North Easton, and that, being unable to sign his name, he made his mark, so that the entry on the books was as follows : " William Scriven $\overset{\text{his}}{\underset{\text{mark}}{\times}}$ , of Brockton, in trust for William Scriven, Lakeville, payable in case of my death

to William Scriven, Jr., Lakeville," and stated in the presence of the witness that "I want my son to have this after my death." The plaintiff, who was the son of William Scrivens, Senior, testified that his father gave him the bank-book "about four months after he put it in; he told me to take that book. I had a bank-book of my own about that time. He says, 'Somebody may take that book.' He says, 'Take that bank-book and your own and give it to your niece.'" On cross-examination he testified that he looked the book over and saw about what it was, and when he was going home said, "I won't mind, and I will leave this here until it is called for," and that he left it with his father until the latter died; that he never withdrew any of the deposit or interest, and did not go to the bank until after his father's death; that when his father died the plaintiff knew that the money was in the bank for him; that he knew his father "would n't take it out only a little at a time, — he reserved the right to draw what he saw fit"; that his idea, and his father's, was that his father wanted him to have whatever was left after his father's death; and that he never asked his father for any of the money, but that his father told him when he wanted it he could have it.

This was all the material testimony in the case. The claimant requested the judge to instruct the jury: 1. That they should return a verdict for the claimant. 2. That if the jury find that the deceased delivered the bank-book to the plaintiff, and it was returned to him with the right reserved for the deceased to control the deposit, and to make such withdrawals as he saw fit, there was no executed trust or completed gift, and that the verdict must be for the claimant. 3. That if the deceased informed the plaintiff of the deposit in the manner and form shown by the bank-books and the testimony of the treasurer, this would not constitute a trust entitling the plaintiff to the deposit. 4. That if the deceased changed his intention of leaving the money in the bank for his son, it operated as a termination of the trust, if any existed. 5. That unless the jury find that the deceased actually notified the plaintiff of his deposit, parted with the control of the money in his lifetime, and placed it in the control of the plaintiff, they must find for the claimant. 6. That, on the evidence, no trust existed on the

decease of William Scrivens, Senior, entitling the plaintiff to the money deposited in the bank. The judge declined so to rule, and instructed the jury in substance as follows.

The defendant bank holds the money deposited by William Scrivens, Senior, for the owner, whoever he may be. The plaintiff, son of William Scrivens, Senior, and the executor of the estate of the latter, both claim it; and this case is to be decided according as to whether the jury find, within the rules of law, that the property passed to the son before the father's death. The father originally owned the money; and it is the duty of the son to show that it was transferred from his father to him, and he cannot prevail unless he proves that proposition. In the first place the bank-book is produced, and it appears that when the deposit was made the father said something to the treasurer of the bank about giving this money to his son, and the bank treasurer wrote in the book: "William Scriven $\times$ his mark, of Brockton, in trust for William Scriven, Lakeville, payable in case of my death to William Scriven, Jr., Lakeville." But what is thus written in the book is not enough. It may be that that language is ambiguous, and may mean that the money is now the property of the son, but it is to be delivered to him at the father's death, — or that when the father dies it shall become his property; and there is a difference in the two propositions. A gift may be made to a person with a provision that he shall not come into control of it until after the happening of a certain event, — say until after he is twenty-one, or on the death of some one. It is the contention of the plaintiff that that was what his father meant, and that the provision that he should not have it until his father died was simply to state when he should have it; that it should be the plaintiff's property all the time, but that he should not come into possession of it until his father's death; whereas the executor contends that the meaning of the language and the intention of the father when he made the deposit were, "This is mine as long as I live, to do with it as I see fit, but when I die, if there is any of it left, it shall go to my son," and that there should be no transfer of the property until his death. But whichever view is taken, that is not sufficient to establish the gift. In this Commonwealth, even if the father when he made the deposit intended to hold it as the

property of the son, and not his own, that in law is not sufficient without a notice or declaration of that intent to the son to complete the gift. In order to understand the case more clearly, because it turns on distinctions that must be attended to, suppose, for instance, a person says to another, " I intend to give you ten dollars to-morrow night," but when to-morrow night comes he says, " I don't think I will do it," there is no claim against him, for if he undertakes to give anything, the gift is not perfected until he has delivered it; but when he has delivered the money the gift is completed, whether there was any consideration for it or not. In these savings bank cases, telling a person that he shall have the money is equivalent to a delivery of it, if there is the intent that he shall from that time own it. There can be no verdict for the plaintiff unless it is found that he had had such a conversation with his father as that to which he testifies, and that the father declared his intention, though not necessarily in express language, that the property should then belong to the son, but that he could not have it until his father's death.

The judge, after cautioning the jury as to the qualifications with which testimony as to a conversation between two persons, as related by the survivor of them, is to be received, further instructed them as follows. The son testified that in 1890 his father told him that he had made this deposit; that he handed the son the book and said that it was his; that the son had the book a little while, a few minutes, and then said to his father, in substance, " Perhaps you may want some of this money, and if you do, you may take the book and keep it for me, and draw it out as you want it. I don't care; I am willing you should have some of it, even though it does belong to me." If the father, having the intention that the property should from that time belong to the son, although he could not take possession of it until after the death of the father, delivered the book to the son, and communicated to him his intention, the gift was complete according to law, although afterward the son returned the book to his father and gave him permission to draw some out when he wanted it. After the property had once passed, the son had the right to agree to let his father have some of it, as if it had been originally deposited by the son. The executor contends

that the father did not complete the gift, but simply said to his son, "This may be your property, what there is left of it after I die; but so long as I live it is mine, and I may draw out as I choose, but if there is anything left you may have it when I die." But a man cannot make such an agreement, because, if he is inclined to dispose of his property at his death, he must do it by will, in the presence of three witnesses, as the law requires.

The jury returned a verdict for the plaintiff; and the claimant alleged exceptions.

*L. C. Southard & L. E. Chamberlain*, for the claimant.

*F. V. Fuller*, for the plaintiff.

MORTON, J. The question between the plaintiff and claimant is whether a valid trust has been established in the plaintiff's favor, so as to entitle him to the deposit, or whether what was done was an attempted testamentary disposition of it. That is a question of fact for the jury, and the distinction between the two was clearly pointed out by the presiding justice in his charge.

The jury were also told, in substance, that what was written in the bank-book was not enough, but that in addition to that the testator must have indicated to the plaintiff in some form of language that the deposit then belonged to him, although he could not have it until his father's death, and that this was assented to by him.

There was testimony from the treasurer of the savings bank that at the time of the deposit the testator said that he wanted his son to have it after his death. There was also testimony from the plaintiff, the weight and import of which were for the jury, that about four months after the deposit the testator told him to take the book, saying somebody might take it, and that he should take it and his own and give them to his (plaintiff's) niece; that the plaintiff took it and looked it over and saw about what it was, and then said he would leave it there until it was called for, and that he left it with his father until he died; that he knew it was there for him; that his father reserved the right to draw what he saw fit, though he knew that he would only draw a little at a time; and that his father told him that he could have it (the money) when he wanted it.

We cannot say, on this testimony, that the jury was not jus-

tified in finding a gift.    *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159.    *Eastman* v. *Woronoco Savings Bank*, 136 Mass. 208.    *Alger* v. *North End Savings Bank*, 146 Mass. 418.

The defendant objects further, that the charge was ambiguous, and that under it the jury might have found for the plaintiff even though the gift was to take effect at a future time or on the father's death, and was not communicated to the son.    We do not think that the objection is well taken.    More than once in the charge the court pointed out the difference between a present gift and a future gift, and told the jury that, if they found that what was intended by the father was a future gift, then the plaintiff was not entitled to recover.    The court also told the jury, that it was not enough that there should have been an intention on the part of the father to make a present gift, but that the intention must have been communicated to the son, and, as the charge plainly implied, assented to by him.    Taking the charge as a whole, we discover no error or ambiguity in it.

*Exceptions overruled.*