## Jacobs, Administratrix, *v.* Jolley et al.

[No. 3,490.  Filed February 19, 1902.  Rehearing denied April
29, 1902.]

Gifts Inter Vivos.—*Bank Deposit.—Delivery.—Postponement of Enjoy-
ment.*—A voluntary assignment of a specific portion of a fund on
deposit in a savings bank, made out on a printed form provided by
the bank, directing the bank to pay the sum specified to the donee
at the donor's death, accompanied by the manual delivery of the
deposit-book showing the account between the donor and the bank,
constituted a valid gift *inter vivos.*  The fact that the gift was not
to become effective in enjoyment by the donee until the donor's
death did not render the gift conditional, but only postponed its
enjoyment.  *pp. 28–34.*

Same.—*Bank Deposit.—Delivery.*—Where a gift was made of part of an
amount on deposit in a savings bank accompanied by the delivery
to the donee of the deposit-book, it was not necessary in a gift of
the remainder that the deposit-book be returned to the donor and
redelivered to the donee; the statement by the donor "You
already have the bank-book, and I give it all to you," was suffi-
cient, under the circumstances, to constitute a valid gift of the
entire amount on deposit.  *pp. 34–36.*

Trial.—*Directing Verdict in Favor of Party having Burden of Issue.*—A
request by the party having the burden of the issue on trial for a
direction to the jury to return a verdict in his favor should not be
granted when the verdict must be based upon the testimony of
witnesses wholly or partially.  *pp. 36–44.*

From Tippecanoe Circuit Court;  *W. C. L. Taylor,*
Judge.

Action by Mary A. Jacobs, administratrix of the estate
of Sarah A. Cloyd, deceased, against Frances L. Jolley, to
recover certain assets of the estate in the possession of
defendant in which the latter asserted ownership by gift.
From a judgment for defendant, plaintiff appeals.
*Reversed.*

*W. V. Stuart, E. P. Hammond, D. W. Simms* and *A. D.
Cunningham,* for appellant.

*R. P. Davidson* and *A. Boulds,* for appellees.

Black, J.—The appellant, administratrix of the estate
of Sarah A. Cloyd, deceased, brought her action against

Frances L. Jolley and The Lafayette Savings Bank. The purpose of the action shown by the complaint was to recover as assets of the decedent's estate a sum of $1,077.20 on deposit in the savings bank, and to require Frances L. Jolley to deliver up to the appellant a bank-book, or pass-book, issued to the intestate by the bank, which showed the condition of the account between the bank and the intestate, of which said Jolley, it was alleged, had obtained possession at or prior to the death of the intestate. Frances L. Jolley filed separate affirmative answers to the complaint, and her cross-complaint, in all of which she asserted her ownership of the money in question by way of gift from the intestate. A demurrer of the appellant to the cross-complaint, for want of sufficient facts, was overruled. The appellant replied to the answers of Frances L. Jolley, and answered her cross-complaint, by denials. The bank filed pleadings in the nature of petitions for interpleader. The contentions here are between the appellant and Frances L. Jolley.

The cause was tried by jury, the defendant Jolley having the burden of proof, and at the conclusion of the evidence the court, upon the motion of the defendant Jolley, instructed the jury as follows: "Gentlemen of the jury, the jury is instructed to find for the defendant Frances L. Jolley on her answers to the first and second paragraphs of complaint, and to find for the defendant Frances L. Jolley on her cross-complaint, that she is the owner of the bank-book in controversy, and that she is entitled to the $1,077.20 deposited in the Lafayette Savings Bank in the name of Sarah A. Cloyd; and that the jury find for the defendant Frances L. Jolley on her cross-complaint against the Lafayette Savings Bank that she is the owner of said bank-book and the $1,077.20 in controversy." The verdict corresponded to this direction. The appellant insists that the court erred in overruling the demurrer to the cross-

complaint, and in directing the jury to return their verdict for the defendant Jolley.

In the pleading denominated a cross-complaint, seeking affirmative relief for Frances L. Jolley, she showed, amongst other pertinent matters, that Sarah A. Cloyd, the mother of the appellant and the appellee, on the 19th of July, 1899, having on deposit in the savings bank $1,077.20, and having in her possession the deposit-book, or pass-book, of the bank, which, by its entries, showed that she had that amount to her credit in the bank, "made an absolute gift to the cross-complainant of the sum of $700, telling her that she gave to her said sum; and, to confirm and to secure to plaintiff the said gift, she executed and delivered to the cross-complainant a written order upon said Lafayette Savings Bank," as follows: "$700. July 18, 1899. Treasurer of Lafayette Savings Bank. Please pay at my death, to the order of Frances L. Jolley, $700; allow him to sign your draft-book and have the same entered in my deposit-book, No. ———, which is to accompany this order. Sarah A. Cloyd." It was alleged that the word "him" in this order occurred in the printed form used by the bank, which, by inadvertence, Sarah A. Cloyd did not change to "her," that at the same time she voluntarily delivered actual manual possession of the pass-book to the cross-complainant as her own, and the same was then and there accepted by her, "and she has had the same in her possession thence to the present time;" that afterwards, in October, 1899, the intestate made the cross-complainant an absolute gift of the remainder of the money so on deposit, and noted on the pass-book, saying to her: "You already have the bank-book, and I give it all to you," and at the same time made a further gift of her pocketbook, containing a small sum of money, and manually delivered the pocketbook and small amount of money to her, which gifts the cross-complainant at the time accepted; "and so the whole sum of $1,077.20 became and

was the rightful property of the cross-complainant; that from that time onward, and continuing to the death of said Sarah A. Cloyd, and ever since, this cross-complainant has been in the actual possession of said book;" that after the death of Sarah A. Cloyd, the cross-complainant presented the bank-book to the savings bank, and demanded payment, etc.

It is contended on behalf of the appellant,—correctly, we think,—that this pleading did not show a gift *causa mortis,* because it did not show that it was made in apprehension of death *(Langworthy* v. *Crissey,* 10 Misc. (N. Y.) 450, 31 N. Y. Supp. 85; *Brunson* v. *Henry,* 140 Ind. 455); but it is also insisted that it did not state facts sufficient to show a gift *inter vivos;* that, as to the alleged gift of $700, as well as that of the remainder of the deposit, the facts specially set forth fail to show a gift; that it appears that the intestate attempted to make the alleged gifts to take effect at her death; and we are referred by counsel to *Smith* v. *Dorsey,* 38 Ind. 451, 10 Am. Rep. 118, where it is held that, to constitute a valid gift *inter vivos,* it is essential that the article given should be delivered absolutely and unconditionally; that the gift must take effect at once and completely, and when it is made perfect and complete by delivery and acceptance it then becomes irrevocable by the donor; that gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect, and a court of equity will not interfere, and give effect to a gift that is inchoate and incomplete. The property involved in that case was a gun,—a thing capable of actual present delivery,—and the gift was expressly conditioned upon an uncertain future event.

Counsel, in referring in argument to the order copied in the pleading, call it a check. This is hardly an accurate name for the instrument. If its purpose and all the circumstances of the transaction be taken into consideration, it will more properly be called a voluntary assignment of a

specific portion of a fund on deposit in a savings bank. It seems to have been made out upon a printed form provided by the bank, and by its terms was to be accompanied by the deposit-book showing the account between the intestate and the bank. It is alleged that at the time of its delivery to the appellee by the intestate she also voluntarily delivered to the donee actual manual possession of the pass-book as her own, and it was then accepted by the donee, who thereafter held it in her possession, and that the intestate told the donee that she gave her the sum named in the order. For the assignment of such a deposit no particular form is necessary; any language or act which makes an appropriation of the fund is sufficient to make an equitable assignment of the fund. In *Slaughter* v. *Foust*, 4 Blackf. 379, it was said that no formality is necessary to effect an equitable assignment of a chose in action,—as a promissory note; that any transaction between the contracting parties which indicates their intention to pass the beneficial interest in the instrument from one to the other is sufficient for that purpose; and that a debt may be assigned, in equity, by parol as well as by writing. Here the written evidence of the debt was delivered with a separate written appropriation of a definite part of it in the form provided by the bank for such purpose, which manifestly contemplated and indicated that such an assignment, accompanied by the book, would be sufficient for the making of the appropriation. It is the accepted doctrine in this State that the drawing and delivery of an ordinary banker's check, without words of transfer, and drawn upon no particular designated fund, unless accepted by the drawee, does not of itself operate as an appropriation or equitable assignment of a fund in the hands of the depositary, the drawee, or as an assignment of a part of the drawer's chose in action against the drawee. *Harrison* v. *Wright*, 100 Ind. 515, 538, 539, 50 Am. Rep. 805. That case, however, holding that, strictly speaking, the depositary holds no fund to be

appropriated, but owes a debt, the right of the depositor being a chose in action, expressly recognizes the right of the depositor, as the holder of a chose in action, to assign it in whole or in part, saying that, when assigned, equity, for the purpose of making good the assignment, seizes upon the debt and calls it a fund; and it is said by the court that in equity an assignment of a part of a chose in action or fund, if really made, will be upheld and enforced, whether the debtor has assented thereto or not. The court quoted the following from Story's Eq. Jurisp., §1044: "If A, having a debt due to him from B, should order it to be paid to C, the order would amount in equity to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. The same principle would apply to the case of an assignment of a part of such debt. In each case, a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it." Our Supreme Court further said: "What we now hold is, that the simple facts that the fund or debt is a general one, and that there is no promise or assent to the assignment by the debtor or holder of the fund, are not insuperable barriers to such an assignment." It is also said in the court's opinion: "In the absence of evidence to the contrary, or a showing of an intention to assign a part of the fund in the hands of the drawee, or a part of the drawer's chose in action against the drawee, it should be presumed that the payee or holder of the check takes it upon the credit of the drawer, of whom he may collect, if payment be refused by the drawee." In 2 Am. & Eng. Ency. of Law (2d ed.), 1065, it is said that the doctrine which prevails in England, and is sustained by the weight of authority in the United States, is that an unaccepted check, drawn in the ordinary form, not describing any particular fund, or using words of transfer of the whole or any part of an amount standing to the credit of the drawer, is of the same legal effect as a bill of exchange, and does

not amount to an assignment in law or in equity of the money to the credit of the holder, but is simply an order which may be countermanded, and the payment of which may be forbidden by the drawer at any time before it is actually cashed. In the same volume, page 1070, it is said that where one assigns a definite portion of a debt or a chose in action to a third person, whether by an order in his favor or otherwise, it is a valid equitable assignment *pro tanto,* which a court of equity will recognize and enforce. In the case at bar both the written evidence of the debt and a written assignment of a part of it were delivered by the intestate to the appellee, and retained by her.

The requirement of a valuable consideration to support an assignment of a chose in action does not apply to an executed voluntary assignment, perfected by delivery, or what may be properly treated as amounting to a delivery.

We think that it should be the object of the court not to defeat, but rather to carry into effect, the intention of the intestate, if it can find itself able to do so without violation of some controlling principle of law. "The right to give is as clearly incident to the right of property, as the right to sell; and choses in action are as much within the scope of this principle as lands and chattels; and hence, a delivery by way of gift of an instrument evidencing a debt, without written indorsement by the donor, as effectually transfers the beneficial interest in the property to the donee, as would such delivery by way of assignment for value." *Polley* v. *Hicks,* 58 Ohio St. 218, 50 N. E. 809, 41 L. R. A. 858.

In *Penfield* v. *Thayer,* 2 E. D. Smith 305, where the gift was upheld, being a deposit in a savings bank, the court was of the opinion that the delivery of a book of accounts, or a single account, with intent to transfer, gives the transferee a right to collect and appropriate the money due to his own use.

Our statute relating to savings banks, §2991 Burns 1901, provides: "All certificates or other evidences of deposit, made in pursuance of the regulations of any savings bank, shall be as binding upon the corporation issuing the same as if made under its common seal."

The pass-book issued by the savings bank should be regarded as a chose in action for the amount of the deposits shown thereby. It has frequently been decided that a delivery of a pass-book of a savings bank by the depositor, with intent that the recipient should take the title to the money represented therein, is a sufficient delivery to make a valid gift of the money. *Kimball* v. *Leland,* 110 Mass. 325; *Davis* v. *Ney,* 125 Mass. 590, 28 Am. Rep. 272; *Camp's Appeal,* 36 Conn. 88, 4 Am. Rep. 39; *Schollmier* v. *Schoendelen,* 78 Iowa 426, 43 N. W. 282, 16 Am. St. 455; *Pierce* v. *Boston, etc., Sav. Bank,* 129 Mass. 425, 37 Am. Rep. 371; *Guinan's Appeal,* 70 Conn. 342, 39 Atl. 482.

In *Hill* v. *Stevenson,* 63 Me. 364, 18 Am. Rep. 231, it was held that a delivery to a donee of a savings bank book containing entries of deposit to the credit of the donor, with the intent to give the donee the deposits represented by the book, is a good delivery to constitute a complete gift of such deposits; that such delivery vests the equitable title in the donee without an assignment, though the rules of the savings bank printed in the book provide for a withdrawal or transfer of the funds, or any part of them, only by the depositor, or upon a written and attested order. See, also, *Polley* v. *Hicks,* 58 Ohio St. 218; *Watson* v. *Watson,* 69 Vt. 243, 39 Atl. 201.

A mere promise to give property in the future, being without consideration, is not enforcible, and so, where the gift is to take effect after the donor's death, he retaining dominion and control over the property in the meanwhile, will not be effectual without the formalities necessary to a testamentary disposition of property. To constitute a valid gift *inter vivos,* it must be fully executed, before the death

Jacobs *v.* Jolley.

of the donor, by delivery and acceptance; but what will constitute sufficient delivery to make the gift effective will be determined by the circumstances of the particular case. The donor must give up the possession of the property so far as it is capable of delivery by the donor, and must yield to the donee dominion and control over it, with the intent to pass the title thereto gratuitously. A sufficient delivery of a chose in action may be made by the assignment thereof. If it be evidenced by a writing capable of delivery, the necessary transfer may be made by the delivery and acceptance of the written evidence of the chose in action, the intent to make a gift being sufficiently indicated, with or without a written assignment.

The mere fact that the gift is to become effective in enjoyment by the donee at the donor's death does not render it invalid if the donor relinquish immediately all his rights in the property which is the subject of the gift, transferring to the donee, if it be a chose in action, the written evidence thereof, with intent to part with the dominion and control over the property. If, under all the facts as disclosed by the cross-complaint, the alleged gift could be said to be fully executed by unconditional delivery and acceptance with intent to make and receive a gift in the lifetime of the donor, had the words "at my death" been omitted from the written order, it must be regarded as an executed gift; for those words do not make the gift conditional, but only postponed its enjoyment. See *Wyble* v. *McPheters,* 52 Ind. 393; *Green* v. *Tulane,* 52 N. J. Eq. 169, 28 Atl. 9; *Langworthy* v. *Crissey,* 10 Misc. (N. Y.) 450, 31 N. Y. Supp. 85; *Martin* v. *Martin,* 170 Ill. 18, 48 N. E. 694; *Merriweather* v. *Morrison,* 78 Ky. 572; *Hagerman* v. *Wigent,* 108 Mich. 192, 65 N. W. 756.

The event which was to transpire before the amount specified in the order was to be paid was certain to take place,—the death of the donor,—and the evidence of in-

debtedness and the means of control over a certain portion thereof were delivered unconditionally. The gift itself was not made to depend upon any contingency, but took effect at once, so as to confer a present interest in the definite amount assigned, the enjoyment of which was postponed until the death of the donor, by whom no right to revoke was reserved. *Schollmier* v. *Schoendelen,* 78 Iowa 426, 43 N. W. 282, 16 Am. St. 455.

It may be objected that though the donor, along with the assignment of a part of the deposit, delivered the bankbook, yet she retained her interest in the remainder of the deposit, and, therefore, the delivery of the book did not devest her of all the interest in the book as an evidence of indebtedness; nor did she surrender her dominion over the book, so far as its future possession by her might be necessary to enable her to draw the balance of the deposit; yet, it must be answered, if she made as full delivery and as complete surrender of dominion as was possible in order to make a gift of a definite portion of the fund, this was all that could be necessary, under the circumstances, unless, indeed, her ability to donate part of this fund be denied, which we can not do. The owner must intend to part with the title and control at the time of making the gift, and must, then, in fact, part with his dominion over the thing given; but while a delivery is necessary to the validity of the gift, "yet it is not necessary that there should always be a manual delivery of the thing given. It will be sufficient if the delivery be as complete as the thing, and the circumstances of the parties, will permit." *Gammon Seminary* v. *Robbins,* 128 Ind. 85, 12 L. R. A. 506.

The fact that after making the gift of a definite portion of the fund in the bank the donor retained her ownership of the remainder thereof, would not necessarily affect the validity of the gift of the portion, though the possession of the bank-book were necessary under the by-laws of the bank to the withdrawal of the remainder of the fund by

the depositor. The return of the book to the donor for the sole purpose of enabling her to obtain the balance from the bank, without relinquishing the prior gift of the portion of the fund, would not invalidate or affect the previous executed gift.

If a gift has been fully executed, the title having passed by words of gift accompanied by delivery of possession, the return of the property by the donee to the donor for a purpose not inconsistent with the continued ownership of the donee will not render the executed gift invalid. *Whitford* v. *Horn,* 18 Kan. 455; *Matter of Wachter,* 16 Misc. (N. Y.) 137, 38 N. Y. Supp. 941; *Ivey's Adm.* v. *Owens,* 28 Ala. 641; *Easly* v. *Dye,* 14 Ala. 158; *Danley* v. *Rector,* 10 Ark. 211, 50 Am. Dec. 242; *Allen* v. *Knowlton,* 47 Vt. 512; *McNally* v. *McAndrew,* 98 Wis. 62, 73 N. W. 315; *Crittenden* v. *Phoenix, etc., Ins. Co.,* 41 Mich. 442, 2 N. W. 657.

In *Scrivens* v. *Savings Bank,* 166 Mass. 255, 44 N. E. 251, the trial court, in an instruction which was approved by the supreme court, said: "If the father, having the intention that the property should from that time belong to the son, although he could not take possession of it until after the death of the father, delivered the book to the son, and communicated to him his intention, the gift was complete according to law, although afterward the son returned the book to his father and gave him permission to draw some out when he wanted it."

Whatever might be the proper conclusion if the first donation and delivery of the book had not been followed by a donation of the remainder of the deposit and a reference to the book sufficient to amount to a delivery thereof absolutely, no reservation of any interest being made by the donor, yet, finally, before she died, she did part with her entire control over the book for any purpose, and indicated her understanding that the former gift was effectual, and, if the former delivery was not sufficient for the purpose of the first gift, the final delivery, with the words accompanying it, was sufficient for the purpose of both gifts.

To make a gift of the deposit evidenced by a savings bank book, an actual delivery of the book by the donor to the donee at the time of making the gift is not necessary, when the donee is already in possession of it, but the gift, if complete and unambiguous, may be effected by a simple oral declaration. *Providence Inst.* v. *Taft*, 14 R. I. 502. See, also, *Tenbrook* v. *Brown*, 17 Ind. 410.

It is not essential that the delivery of the property be at the time of the making of the gift. The title may pass, though the property be already in possession of the donee, if otherwise the intent to transfer the rights of the donor gratuitously be sufficiently evidenced. *Alderson* v. *Peel*, 64 L. T. R. 645.

The allegations of the cross-complaint indicate that the second alleged gift was intended to be a gift of the remainder of the amount on deposit, there having been no revocation of the gift of $700, which was assumed by the donor to be still effective. Her language, including the reference to the donee's possession of the bank book, indicated a purpose to give, not only the donation already made, but also the remainder of the deposit. To effectuate this additional gift, it was not necessary that the parties to the transaction should go through the useless formality of an actual surrender of the book and a re-delivery thereof, if the purpose of the donor to have the donee keep the book for the further purpose of a gift of the remainder, as well as for the purpose of the earlier gift, was sufficiently manifested by the voluntary action of the donor. The cross-complaint shows a final delivery of the book for the purpose of a gift of the whole of the fund. We think that the cross-complaint should be held sufficient.

On the trial the appellee, having the burden of proof, in whose favor the court directed the jury to return their verdict upon her affirmative answers and her cross-complaint, introduced much oral evidence. The appellee testified in her own behalf. Many witnesses testified on

Jacobs *v.* Jolley.

behalf of the appellant. The practice of directing verdicts has grown up in the gradual development of the law as a substitute for the more cumbersome practice of demurring to the evidence (which, however, it has not wholly suppressed in this State), the motion for a direction of verdict against the party having the burden of proof being more convenient than a demurrer to evidence, in that, while it, like the latter, admits all that the evidence of the adverse party proves or tends to prove, it is not subject to the technical particularity of a demurrer to evidence, and no judgment is rendered against the maker of the motion upon the overruling thereof. *Bartelott* v. *International Bank,* 119 Ill. 259, 9 N. E. 898.

While the practice of demurring to the evidence has come to be plainly settled, and the principles involved have been clearly stated, in this State, it can not be said that the decisions of our courts relating to the directing of verdicts are in perfect harmony. Those which proceed upon announced principles in harmony with those which govern in cases involving demurrers to evidence clearly condemn the practice sanctioned by the trial court in the case at bar. In *Pickel* v. *Isgrigg,* 6 Fed. 676, it was said: "The party upon whom the burden of the issue rests is not permitted to demur to the evidence of the other party, for he can not be allowed to assume that he has made out his case."

Where the party having the burden of proof demurs to the evidence, the court can not invade the province of the jury by finding the facts which his evidence tends to prove, and cannot institute a comparison between them and the facts established by his adversary's evidence. *Goodman* v. *Ford,* 23 Miss. 592.

In *Woodgate's Adm.* v. *Threlkeld,* 3 Bibb. (Ky.) 527, it was said: "The defendant could not by demurring cause his own evidence to be taken for true, and the court can not, without usurping the province of the jury, decide upon its truth." See, also, *Fritz* v. *Clark,* 80 Ind. 591; *Palmer* v. *Chicago, etc., R. Co.,* 112 Ind. 250.

In *Meyer* v. *Manhattan Ins. Co.,* 144 Ind. 439, 446, it is said: "The principles applicable to a ruling on a motion to require a jury to return a verdict in favor of the plaintiff or the defendant are the same as those which apply to a ruling upon a demurrer to the evidence."

In *Purcell* v. *English,* 86 Ind. 34, 44 Am. Rep. 255, it is held that, whatever be the character of the issue, the case can not be taken from the jury if there are any facts proved from which the jury would, by fair and reasonable inference, be authorized to find for the plaintiff; that the rule is substantially the same as that which obtains when there is a demurrer to the evidence. When a demurrer to the evidence would be sustained, the court may instruct the jury to find against the plaintiff. *Steinmetz* v. *Wingate,* 42 Ind. 574.

When there is no evidence which shows a cause of action in the plaintiff, it is the duty of the court to direct the jury to find for the defendant. *Vance* v. *Vance,* 74 Ind. 370; *Stroble* v. *City of New Albany,* 144 Ind. 695; *Engrer* v. *Ohio, etc., R. Co.,* 142 Ind. 618; *City of Plymouth* v. *Milner,* 117 Ind. 324.

When there is no evidence to support a verdict for the plaintiff, it is not error for the court to direct the jury to return a verdict for the defendant. *Boyd* v. *Brown,* 120 Ind. 393. But if there is any conflicting evidence, however slight, upon the point in issue, it must be left to the jury. *Messick* v. *Midland R. Co.,* 128 Ind. 81; *Cincinnati, etc., R. Co.* v. *Darling,* 130 Ind. 376; *Pennsylvania Co.* v. *McCormick,* 131 Ind. 250; *Wolfe* v. *Evansville, etc., R. Co.,* 136 Ind. 383; *Ueker* v. *Bedford Blue Stone Co.,* 142 Ind. 678; *Oleson* v. *Lake Shore, etc., R. Co.,* 143 Ind. 405, 32 L. R. A. 149. Many other decisions are to the same effect.

In *Wolfe* v. *McMillan,* 117 Ind. 587, 593, where there was a cross-complaint, and the trial court directed a verdict for the plaintiff, which the court, on appeal, disapproved, it was said: "The rule which governs such cases

is analogous to the rule which governs on a demurrer to the evidence. If the plaintiff's evidence, with all the legitimate inferences which the jury might reasonably draw from it, is insufficient to sustain a verdict in his favor so that if a verdict for the plaintiff, if one should be returned, would be set aside, the court may properly direct a verdict for the defendant, without submitting the evidence to the jury."

In *Gregory* v. *Cleveland, etc., R. Co.,* 112 Ind. 385, it was said that the right of a court to direct a verdict for the defendant in case the plaintiff's evidence, giving it the most favorable construction it will legitimately bear, fails to establish any fact which constitutes an essential element in his right of action, is clear; and that the rule which governs in such cases is substantially that which controls where there is a demurrer to the evidence; also, that it is for the court to say whether, upon the evidence most favorable to the plaintiff, an inference of liability can reasonably be drawn; and it is for the jury to say upon all the evidence submitted to them, under proper instructions from the court, whether liability ought to be inferred.

In 6 Ency. Pl. & Pr., 694, it is said: "The general rule of law has always been that the credit to be given to the testimony of witnesses is a matter exclusively within the province of the jury. This would seem to preclude the court from directing a verdict for the party upon whom the burden of proof rests, when his evidence, in whole or in part, material to the issues, is oral, or even where it is in writings of such a character as not to be conclusive. The direction of verdicts superseded demurrers to evidence, and is governed by the same rules. A demurrer to evidence can not be taken by the party holding the affirmative of the issue. He can not be allowed to assume that he has made out his case. A motion for the direction of a verdict, made against the party having the burden of proof, necessarily admits the credibility of his witnesses, since it

admits all the facts and inferences of fact which his evidence proves or tends reasonably to prove.  But where such a motion is made by the party holding the affirmative of the issue, the sufficiency of his own case as well as that of the adverse party is before the court.  Supposing him to have made out a *prima facie* case, the facts of which are undisputed, is it necessary to submit it to the jury because they are the exclusive judges of the credibility of the witnesses?  In some of the earlier cases a verdict was always directed with a proviso such as 'if the jury believe the evidence.'  Others have directed verdicts where there was a sufficiency of written evidence to sustain them, on the theory that it is for the court to construe and interpret instruments in writing."

The fact that a witness is interested in the result of a suit, or any fact that might bias his testimony, will necessitate its being submitted to the jury for their judgment as to his credibility.  6 Ency. Pl. & Pr., 696.

In *Governor, etc.* v. *Shelby,* 2 Blackf. 26, it was said: "The jury being the constitutional judges not only of facts, but of the weight and extent of the evidence, they should be left in the unbiased possession of every case, where there is evidence that conduces to prove every material fact in the case.  When a party is unwilling to trust his case to a jury, he may demur to the evidence; but where the case is submitted to the jury, he is not entitled to the instruction of the court in his favor on the weight and extent of the testimony, in every case where, on a demurrer to evidence, he would be entitled to a judgment."

In *Crookshank* v. *Kellogg,* 8 Blackf. 256, it was said: "Where there is any evidence, however slight, tending to prove any fact essential to the maintaining of the suit, the question as to the sufficiency of the evidence to establish that fact is for the jury, and not for the court."

When the court may properly instruct the jury to return a verdict for a party, it does so by way of discharging the

court's own duty, without usurping or invading the province of the jury. If there is evidence which tends to sustain the material allegations of the complaint, its sufficiency or insufficiency is a question for the jury. *Adams* v. *Kennedy*, 90 Ind. 318.

In *Weis* v. *City of Madison*, 75 Ind. 241, 254, 39 Am. Rep. 135, where the trial court's action in directing a verdict for the defendant was sustained, it was said: "A judge is not bound to submit a question to a jury, when their verdict, if contrary to his views of the testimony and its legal effect, would be certainly set aside, as clearly against the law and the evidence. * * * Courts do not, however, undertake to weigh evidence for the purpose of ascertaining in whose favor it preponderates, nor do they undertake to pass upon questions affecting the credibility of witnesses. In short, they interfere only in cases where it is manifest that there is no evidence upon which a verdict could legally rest."

It has been held, as already indicated, in cases involving only written evidence, that the verdict might be directed, upon the theory that the construction and effect of written evidence were for the court to determine. But where the legal import of a written instrument depends not merely upon its construction, but upon collateral facts and circumstances, the inference to be drawn therefrom should be left to the jury.

In *Gipe* v. *Cummins*, 116 Ind. 511, it was said that the court may, in a proper case, direct the jury to return a verdict for the defendant, and may, under some circumstances, direct a jury to return a verdict for the plaintiff, even where he has the burden of the issue; citing, upon the latter proposition, *Gaff* v. *Greer*, 88 Ind. 122, 45 Am. Rep. 449, and *Beckner* v. *Riverside, etc., Co.*, 65 Ind. 468.

In *Gaff* v. *Greer*, 88 Ind. 122, 132, the court instructed the jury to find for the plaintiff, and it was insisted by the defendant on appeal that, since the burden of the issues

was upon the plaintiff, this instruction was wrong. It was said: "It may be, and is conceded, that the cases are rare, indeed, where the court would be authorized to instruct the jury to find for the party upon whom the burden of the issues rests. This could not be done in any case where there was any conflict, however slight, in the evidence, as such direction would deprive the party of the right of trial by jury, which the Constitution provides shall remain inviolate, and we are not now prepared to say that this could be done where the fact to be established depends upon the weight of evidence, though the evidence may be undisputed. In such case the party is probably entitled to the opinion of the jury upon the question of fact. In this case the evidence upon the controlling question was documentary, its construction was for the court, and there was nothing for the jury to do but to return the fact as established by this evidence according to the law announced by the court. This was done by a general direction, which involved an assumption of the fact which this evidence conclusively established, and as this fact was undisputed, and could have not otherwise been found, there was we think no error in the charge, at least none such as should reverse the judgment."

In *Beckner* v. *Riverside, etc., Co.,* 65 Ind. 468, 473,—an action to collect a stock subscription,—the trial court instructed the jury that, under the evidence before them, they should find for the plaintiff for the amount of the subscription, less any payments proved. It was said that this instruction, if given as applicable to the evidence from which the jury were required to find the facts proved in the case, would have been wrong, but, if given as applicable to facts stated in a written instrument, or as to the legal effect of facts not in dispute, it would not be erroneous. "It is within the power, and is the duty, of the court to construe written instruments and instruct the jury as to their legal effect, and to judge whether there is any

evidence before the jury tending to prove a fact in the case; and, when there is no evidence before a jury tending to prove such fact, it is the right of the court so to instruct the jury.   But when there is evidence before the jury tending to prove a fact in the case, the court has no right to instruct them what it proves, or does not prove, nor as to its weight." See, also, *American Ins. Co.* v. *Butler,* 70 Ind. 1, 5.

In *Moss* v. *Witness Printing Co.,* 64 Ind. 125, the action of the trial court in instructing the jury to return a verdict for the plaintiff was approved on appeal, the court stating that no evidence had been given for the defendant, and that the evidence for the plaintiff consisted of a written contract sued on and the testimony of the plaintiff's president as to the amount that had been paid by the defendants on the contract. It was said: "There was no conflicting evidence before the jury. It was the province and duty of the court to construe the written contract, and instruct the jury as to its legal effect."

On the trial of the case at bar there was much competent oral evidence on behalf of each of the parties tending to prove the acts and sayings of the intestate indicative of her intention. There was some conflict in this testimony, but, without regard to the existence of such conflict, it was for the jury, under proper instructions of the court, to judge of the credibility of all the witnesses, to weigh the evidence, to determine what it proved, and to find the facts, according to their judgment, upon the entire evidence relating thereto; and the court, in directing a verdict in favor of the party on whom rested the burden of the issue, usurped the legitimate province of the jury.

It is claimed by her counsel that the appellee also moved for a direction of a verdict in her favor, and we have received in argument some suggestions as to what should be the proper result of a request for such an instruction by both parties; but we can not go into this matter,

for the reason that there is no bill of exceptions showing such a motion and what form of instruction was thereby requested.

In *Hall* v. *Durham,* 109 Ind. 434, it was said that if the jury were required to return a particular verdict, it was necessarily through the medium of an instruction given them by the court, and a question could be reserved upon such instruction only by bringing it into the record in some lawful manner; and that an entry of the clerk in the order-book, to the effect that the jury were required by the order and direction of the court to return the verdict, presented no question as to the propriety of such a direction.

We think it may be said to be sufficiently established upon reason and authority that a request, on behalf of the party having the burden of the issue on trial, for a direction to the jury to return a verdict in his favor should not be granted, when the verdict must be based upon the testimony of witnesses wholly or partially.

The judgment is reversed, and the cause is remanded for a new trial.