THE MUTUAL BENEFIT LIFE INSURANCE COMPANY v. THE WAYNE COUNTY SAVINGS BANK AND ALICE H. CURTIS.

*Contract of married woman— Life insurance—Assignment of policy —Fraud—Pleading.*

1. The introduction in evidence of a promissory note signed by a married woman *jointly* with her husband, with proof of her signature, will not make a *prima facie* case against her.  *Buck v. Haynes Estate*, 75 Mich. 397.

2. In order to bind a married woman, the contract must be one on behalf of her sole property, and it should appear to have been made with that intent, as well as upon a consideration that would sustain it for that purpose ; the burden of proof being on the plaintiff to show for what purpose she contracted, and to prove it clearly.  *West v. Laraway*, 28 Mich. 466.

3. Where an insurance company filed a bill of interpleader against a bank claiming as assignee of a policy under an assignment executed by the assured and his wife, and against the widow, who claimed under a prior assignment from her husband, and who denied the validity of the assignment to the bank, and the answer of the bank was silent as to the *fact* of such *prior* assignment, which was alleged in the bill, such assignment is sufficiently

proved by the testimony of the widow to its execution and delivery, with the policy, and to its subsequent loss and search therefor, and by the introduction of an alleged copy, sworn by her to be genuine.

4. Under How. Stat. §§ 4238, 6300, 6301, a wife may insure the life of her husband in her favor, with a provision that in case she died first the insurance shall be paid to their children, or to their guardian if under age.

5. The validity of an assignment of an insurance policy, issued by a foreign company, is to be determined by the laws of the state where made and attempted to be enforced.

6. On a review of the testimony, the Court find that the assignments of the insurance policies by George E. Curtis and wife were void as to her.

Appeal from Wayne. (Speed, J.) Argued October 12, 1887. Decided January 12, 1888.

Bill of interpleader. Defendant Alice H. Curtis appeals. Decree reversed, and one entered according to opinion. The facts are stated in the opinion.

*Alexis C. Angell*, for complainant.

*Duffield & Duffield*, for appellant.

*Moore & Canfield*, for defendant Wayne County Savings Bank.

SHERWOOD, C. J. Both defendants in this case claim the amount of moneys due upon two policies of insurance issued by the complainant upon the life of George E. Curtis, who was the husband of Alice H. Curtis, one of the defendants.

On November 28, 1864, the company issued the first policy, in the sum of $3,000, to Mrs. Curtis, by the terms of which it was made payable to her if she survived her husband, and, if not, then to be paid to their children, or to their guardian.

December 31, 1866, the company issued the second policy, in the sum of $5,000, to George E. Curtis, payable to the

assured, his executors, administrators, or assigns; and, the eighteenth day of May, 1876, he assigned this policy over to his wife.

Both of these policies, it is claimed by the complainant and the other defendant, were duly assigned by George E. Curtis and his wife to the defendant bank,—the $5,000 policy, on the twenty-third day of July, 1884, and the $3,000 policy, on the twenty-ninth day of the same month. These assignments, Mrs. Curtis claims, are void.

On the thirteenth day of August, 1884, it appears that George E. Curtis and his wife executed to the bank a promissory note for the sum of $7,936.20, payable on or before six months after date. This note recites that the said policies of insurance were deposited with the bank as security for the payment of said note. This note Mrs. Curtis also claims to be void as against her.

George E. Curtis died on the twenty-third day of September, 1885.

The bank, as assignee of the policies as above stated, on the third day of November, 1885, presented proofs of loss; and on the sixth day of January, 1886, Mrs. Curtis presented to the company the usual proofs in such cases, showing the death of her husband; and each party claims the right to receive the amount due on the policies, assured to the proper owner.

The insurance company makes no contest against the claim of the party legally entitled to the money, and, for the purpose of determining this question, it has caused to be filed the bill in this case in the circuit court for the county of Wayne, in chancery, and, under the order of the court, has deposited the amount due upon the policies with the register thereof, for the legal owner of the same. To the complainant's bill setting forth the above facts, and that complainant cannot ascertain to whom it can with safety make payment, and that the bank threatens to bring suit at law to compel

payment of the amount it claims under the policy, the defendants filed their several answers.

The answer of the bank sets forth the assignments of the policies, and avers, among other things, that, prior to their date, the bank had loaned George. E. Curtis and Alice H. Curtis large sums of money, to secure the payment of which the assignments of said policies were made; that, subsequent to the assignments, the bank also loaned certain other moneys upon the same security; and that on or about August 13, 1884, an accounting was had between the parties, and there was then found and agreed to be due to the bank the sum of $7,936.20, for which sum Curtis and wife executed the note before referred to.

That, subsequent to the giving of the note, the bank also loaned Curtis and wife on December 31, 1884, $390; on January 26, 1885, $190; on March 7, 1885, $190; and on September 26, 1885, $70,—making the entire indebtedness due to the bank, $8,776.20; that the consideration for the assignment of said insurance policies as aforesaid was money loaned by the defendant to the said George E. and Alice H. Curtis prior to and at the date of said assignment, and that the same was intended as security to the defendant for the money so loaned as aforesaid, and for any other moneys which the said defendant might thereafter loan to the said George E. Curtis and Alice H. Curtis, or either of them; and that there is now due and unpaid to this bank, for moneys by it loaned as aforesaid, the sum of $8,776.20, besides interest, as security for which this bank holds the aforesaid policies of insurance.

The defendant bank further says that—

"This defendant has no knowledge that the said Alice H. Curtis claims that the said assignments to this defendant are void as against her, or that she is entitled to said money, and leaves complainant to its proofs in regard to said allegation. But it shows that any such claim on the part of said Alice H. Curtis is without any just foundation; that, the said

insurance policies being due and payable to this defendant, this defendant insists that it has a right to collect the same, and, if necessary, to bring suit therefor against the said complainant; and this defendant, upon information and belief, denies that the said complainant cannot safely pay over said moneys, due as aforesaid, to this defendant, or that it is in any danger of being harassed if it should make such payment."

Mrs. Curtis, in her answer, admits the procuring of the policies as stated in the bill, and the assignment of the $5,000 policy by her husband to her. She avers that she—

"Has never sold or transferred the same, for value to her accruing, or knowingly parted with or assigned the legal title to the same, to any other person or party, but claims to be the sole, true, and lawful owner thereof, and of all moneys due and payable thereon."

She admits the claim of complainant on the first of said policies for the amount due on the premium note, and is ready and willing to allow the same on payment to her of the balance admitted to be due thereon.

She denies that she ever made or entered into any contract or agreement with said bank on the thirteenth of August, 1884, or at any other time, or since, by which she became indebted to or chargeable with any liability to pay money to said bank or its assigns; and that she never received any money or valuable consideration from said bank in connection with any such alleged contract or contracts; and that she was never holden in any way, or individually liable to any extent, to said bank.

She further says that she never intended to assign her interest in said policy to the bank, for any purpose or in any manner, and if such an assignment in fact exists bearing her signature, which she does not admit, it was obtained wrongfully and fraudulently, and without any knowledge on her part that the same was attached to any instrument of assignment, or any knowledge on her part that said bank ever claimed that she was indebted to the bank, and it was there-

fore inoperative and void; and that the same is true with regard to the $3,000 policy; that she never had any treaty with the bank or its agents by herself or otherwise by which she assigned said policies, or either of them, to the bank, as security, or in any other manner; that by the death of her said husband the last-named policy became hers absolutely, and she is the sole owner of the same, and entitled to the amount due thereon from the complainant.

She, further answering, says she never, by herself or agent, borrowed or received any sum of money from the bank, and that she never gave her note to said bank; that, if said bank made loans as stated, they were to her husband alone, and on his credit; and that, if he assumed to use her name and signature to the notes and assignments mentioned in the answer made by the bank, it was done without her knowledge or consent, and that she never received anything for or on account of said alleged loans; and, that if her signature was obtained to any paper held by said bank by her said husband, it was done by misrepresentation and deception, and not with her assent, knowledge, or understanding of the same.

The answer further proceeds as follows:

"And this defendant submits and avers that said George E. Curtis, as she has since his death been advised and believes, was in the habit of indulging in various speculations in grains, stocks, and other articles on his own account, and without any knowledge or participation therein on the part of this defendant, but with full knowledge on the part of said Wayne County Savings Bank, or one or more of its officers, who furnished him the means for such operations; and, when said George E. Curtis was unsuccessful, he resorted to certain misrepresentations and deceptions to and upon this defendant to procure the signatures (if such in fact were obtained) of this defendant, in order to carry out those individual operations and schemes of his own; and that said bank consented and co-operated with him in this endeavor, well knowing that this defendant was in nowise interested in or had knowledge of his said operations.

"And this defendant, further answering, says that the means

thus used in procuring her signature to said papers, if such were obtained, were wholly fraudulent and void; and that the notes held by said bank bearing defendant's signature, if any such there are, were all the individual debts of said George E. Curtis, and not of this defendant, who was neither personally, nor in her estate, benefited or advantaged thereby; and she is therefore in nowise chargeable therewith or holden thereon, and she asks this court so to decree.

"And this defendant, further answering, says that at no time during the life of said Curtis was she ever advised, either by him or by said bank, that any moneys had been furnished by said bank, either to said George E. Curtis or any one else, on her name, credit, or securities; and she expressly avers that none such were ever furnished to her.

"And she also avers and declares that not long before the death of said George E. Curtis, and subsequent to the date of said alleged assignment, he expressly informed her, in the presence of third parties, that said policies of insurance were still maintained for her benefit, and would be sufficient, in case of his death, to take care of herself and her children, and she never knew anything to the contrary until after his death, when claim was made by said bank against this defendant on said policies."

The defendant asks that a decree may be entered in her favor, declaring said notes and assignments, if any are held by the bank as claimed, void against her, and that the bank be required to surrender up to her the two policies of insurance, and that complainant be decreed to pay to her the amount equitably due to her thereon.

Considerable testimony was taken in the case, which was heard before Judge Speed, in the Wayne circuit, and who entered a decree that the register of the court pay to the bank the money deposited, and that said bank recover its costs in this suit against the defendant Alice H. Curtis. From this decree Mrs. Curtis appeals to this Court.

After a careful examination of the record, and review of briefs of counsel for the respective parties, I have been unable to arrive at the conclusion reached by the learned circuit judge in this case. The undisputed testimony in the case

shows that Mrs. Curtis, at the time of her marriage, had no property or estate of her own, and that she never before or after her marriage carried on any business herself, or in company with any other person or corporation, but devoted herself exclusively to the care and management of her own household and domestic duties; that she never gave her husband any written power of attorney to do business for her, and that previous to her husband's death she never did any business personally with the bank, or with any of its officers; that her husband, in his life-time, was a reticent man, and never gave his wife any information in regard to his business or his manner of doing it; and that she was extremely ignorant in regard to all business transactions, and of the ways and manner of doing business, and entirely uninstructed in regard to the form of contracts and effect of legal instruments; that her husband failed in business in Detroit in 1879, and that since that time Mrs. Curtis consented to the sale of their homestead, which was placed in her name, and which she held under a contract of purchase, her interest therein being only about $2,000, which her husband received; and this, and some compensation for assistance given to the assignee on a salary, and some moneys received on the sale of an interest in some heirship property in other states, and collections made upon sundry old claims bid in for him at an auction sale made of his bankrupt estate,—in all, amounting to a few thousand dollars,—were the only means for the support of his family. His business, after making his assignment, seems to have been little known to any one except the defendant bank, and its officers and clerks. It does, however, appear, that he had something to do in buying and selling stocks.

It further appears that he procured from the bank, in the shape of loans in various sums, money amounting to over $8,000, and in so doing used or procured his wife's signature with his own to paper upon which most of the loans were

made, and even obtained her signature to assignments of the two policies of insurance which she held upon the life of her husband, as collateral security for the payment of said notes running to the bank, which it held at the time of his death; and it is the money now due upon these policies for which the bank makes the contest in this suit. These facts, thus far, are all undisputed.

It also appears that Mr. Curtis was married to Mrs. Curtis on the thirteenth day of September, 1864, and that the dealings of her husband with the bank, out of which the claim made by it arose, commenced in 1880, and that the account which was kept by the bank was under the name of Alice H. Curtis, and consisted entirely of notes and discounts, and that all the transactions relating to the account were had between S. D. Elwood, who was secretary and treasurer of the bank, and G. E. Curtis.

Counsel for the bank argue that from the record the following facts appear:

"1. That, for a series of years before the policies were assigned to the bank, George E. Curtis had dealt with the bank in his wife's name; during which time the bank had loaned large sums of money upon notes executed by Mrs. Curtis. Some of these notes were paid; others renewed. At other times new loans were made, and new notes given.

"2. That at the date of the assignment of the policies there was actually due to the bank for money thus actually loaned and paid, and for interest thereon, $7,936.20, for which the bank then held some twenty notes, all of which were signed by Mrs. Curtis.

"3. That on or about August 13, 1884, a statement of account showing the amount of indebtedness was rendered to Mr. Curtis, and the note Exhibit A, signed by himself and by Mrs. Curtis, for the amount of indebtedness, was given to the bank, and the original notes were surrendered up by the bank; that this was done on a settlement.

"4. That the $800 paid to Hubbard & Farmer, with interest thereon, is included in Exhibit A.

"5. That Mr. Curtis had repeatedly promised to give

the bank security, and that, relying upon this promise, the debt had been permitted to accumulate.

" 6. That the policies were assigned to the bank by Curtis and wife in compliance with his oft-repeated promises.

" 7. That, subsequent to the assignment, the bank, relying upon the security, loaned other sums of money, which, with the note Exhibit A, exceed $8,000.

" 8. That Mrs. Curtis knew of the existence of the indebtedness to the bank; that she executed the note Exhibit A, and the assignments of the policies; that the same were delivered to the bank, and have remained in its possession ever since, and that the bank thereby became the legal and equitable holder of the policy.

" 9. That there is no evidence of any assignment of the $5,000 policy to Mrs. Curtis, or that she ever had any title to that policy.

" 10. That the assignments executed by Mr. and Mrs. Curtis to the bank were in all respects legal."

Exhibit A, referred to, is as follows:

" DETROIT, MICH., August 13, 1884.

" On or about six months after date, we promise to pay the Wayne County Savings Bank, or order, seventy-nine hundred thirty-six and 20-100 dollars, for value received, with interest at the rate of (8) eight per cent. per annum, payable monthly; having deposited with said The Wayne County Savings Bank, as collateral security, with authority to sell the same at public or private sale, or otherwise, at its option, on the non-performance of this promise, and without notice, insurance policies covering $8,000.

" GEO. E. CURTIS.
" ALICE H. CURTIS."

It appears that Mr Curtis had, before the assignment of the policies to the bank, assigned the small policy to Hubbard & Farmer as security for the payment of $800, which the bank had to pay before it could get the policy into its possession.

Counsel for the bank claim that—

" By the production of the note and policies, and assignments thereof, with proof of the signatures thereto, the bank has made a case which *prima facie* entitles it to a decree for the money called for by these policies and paid

into court.    Exhibit A, being a promissory note, is *prima facie* evidence of consideration; and the burden of proof is upon Mrs. Curtis to show a want of consideration, or some invalidity in the assignments of the policies."

That the defendant Alice H. Curtis was the lawful wife of George E. Curtis, when the note and assignments of policies under which the bank claims were made, is not questioned in the record; and it nowhere appears in the case that the transaction related to the wife's separate estate or property, or that the note and assignments were made for her, or on her account, or that they were intended for her benefit, or that she ever received any consideration or valuable thing whatever upon said note.    Her husband received the money; it was negotiated for by him, and, when obtained, used by him.

The place in which the wife's name appears upon the note is quite as consistent with her character as surety as that of principal upon the paper.    It is only upon the ground that she can be in some way made liable for the payment of the note that the bank can claim to be entitled to the avails of the collaterals transferred by her to secure its payment.

I do not think, under the authorities of this Court, that the introduction of the papers, with the proof of the signature, made out a *prima facie* case against the defendant Mrs. Curtis.    Article 16, § 5, Const.; How. Stat. § 6295.

In *De Vries v. Conklin*, 22 Mich. 255, Mr. Justice COOLEY, in speaking for the Court, said:

" The statute neither in terms authorizes a married woman to make herself liable personally for the debt of another, nor, where no consideration moves to her, can it be presumptively for her benefit."

'In that case the suit was brought to recover on a note made by a husband and wife, on a demand created without any reference to her ownership of property.

Mr. Justice CAMPBELL, in *West v. Laraway*, 28 Mich. 466, said, in speaking upon this subject:

" The contract, in order to bind her, must be a contract on behalf of her sole property. It should appear to have been made with that intent, as well as upon a consideration that would sustain it for that purpose. * * * As we have always held, the burden of proof is on the plaintiff to show for what purpose she contracted, and to prove it clearly."

And on pages 470 and 471, he said:

" Those who deal with her on her personal responsibility must be prepared to show that she acted within her legal powers."

*Kenton Insurance Co. v. McClellan,* 43 Mich. 564 (6 N. W. Rep. 88), was the case of a married woman who denied that the consideration of a note given by her was such as would bind her; and it is said in that case:

" It has been held uniformly by this Court that our statutes do not authorize a married woman to become personally liable on an executory promise, except concerning her separate estate. * * * It has also been settled that there is never any presumption of validity of such an undertaking, whether negotiable or not, and that proof must always be given of such a consideration as will bind her. We think that the rule must apply whether the value is expressed or not, because the power is not general, but statutory, and cannot be extended beyond the constitutional and statutory limits."

To the same effect are the following authorities: *Barnes v. Brown,* 32 Mich. 153; *Emery v. Lord,* 26 Il. 431; *Ross v. Walker,* 31 Id. 120; *Jenne v. Marble,* 37 Id. 319; *Kitchell v. Mudgett,* Id. 81; *Carley v. Fox,* 38 Id. 387; *Johnson v. Sutherland,* 39 Id. 579; *Russell v. Bank,* Id. 671; *Rickle v. Dow,* Id. 91; *Powers v. Russell,* 26 Id 179; *Gantz v. Toles,* 40 Id. 725; *Buhler v. Jennings,* 49 Id. 538 (14 N. W. Rep. 488); *Wilson v. Coolidge,* 42 Id. 112 (3 N. W. Rep. 285); *Richards v. Proper,* 44 Id. 96 (6 N. W. Rep. 115); *Harvey v. Galloway,* 48 Id. 531 (12 N. W. Rep. 689); *Edwards v. McEnhill,* 51 Id. 160 (16 N. W. Rep. 322); *Schlatterer v. Nickodemus,* 51 Mich. 626 (17 N. W. Rep. 210); *Reed v.*

*Buys,* 44 Id. 80 (6 N. W. Rep. 111); *Tompkins v. Hollister,* 60 Id. 479 (27 N. W. Rep. 651).

In regard to the testimony in the case confirming the ten propositions of fact, as claimed by counsel for the bank, above stated, I am unable to agree with them in that conclusion. If what Mrs. Curtis says is true, she never knew that her husband ever had any dealings in her name with the bank, or that she ever signed a note to the bank with her husband, or in any other manner; nor that she ever, with or without her husband, made an assignment of the policies of insurance to the bank; nor that she ever knew, previous to the death of Mr. Curtis, that he owed the bank anything; nor that the bank ever paid Hubbard & Farmer any money to redeem said policies for her; nor that Mr. Curtis ever promised to give to it any securities for moneys he owed, or to be thereafter obtained by him, at the bank, or that any was afterwards obtained on such securities, or that said policies were ever delivered to the bank; and, finally, that she knew nothing of her husband's dealings with the bank until informed by her brother-in-law, Mr. Penney, several days after the death of her husband, and while she was lying upon the bed, too sick to do any kind of business; and that when she was first informed he had been doing business in her name, and that her name appeared to the large note, and to the assignments of the policies of insurance, she was startled and astonished, and very emphatically denied that she had ever signed the notes or the assignments, and not until confronted with them could she be made to believe that the signatures were hers.

It further appears from her testimony that for several years Mr. Curtis had been in the habit of procuring his wife's signatures to blank notes without her knowing what the instruments were, and without any knowledge on her part for what purpose they were to be used, if at all, by him, and that in this manner were the signatures procured to the

instruments used as assignments of the insurance policies; that she never knew that she was signing a note, or the assignment of these policies; that the signatures to the several instruments as they appear were never obtained, and were never given, with her knowledge or consent.

I think the circumstances surrounding these various transactions, all tend to corroborate Mrs. Curtis' testimony; and so far as that of Mr. Penney, and the testimony of the subscribing witnesses to the assignments of the policies, is contained, it fully sustained hers. It appears from the testimony that of all the signatures she made to the blanks, which subsequently turned out notes in the bank against her and her husband,—and there were about 20 of them,— no person ever saw her sign one of them, unless it was her husband. The signatures to the assignments alone are witnessed, and both these witnesses swear they did not see her make them.

Mr. Elwood, who had the dealings with Mr. Curtis in all these matters, says he never said a word to her about any of these transactions, from the beginning to the end, previous to the husband's death, and knew nothing of Mr. Curtis' authority to use the name of his wife as he did, except what Mr. Curtis told him, and never had any correspondence with her previous to the death of Mr. Curtis; neither did he know whether she had any property or not. The entire correspondence and business was had with Mr. Curtis. He presented the papers at the bank, and received the money thereon; and neither the bank nor Mr. Elwood ever knew whether she received any of the money or not. She herself testifies that she never received a farthing. That these policies were assigned in compliance with the "oft-repeated promises" of Mr. Curtis to the bank I have no doubt, but I find nothing in the record satisfying me that it was done with the knowledge or consent of his wife.

The fourth, fifth, and seventh propositions of counsel for
68 MICH.—9.

the bank are sustained by the evidence, but these cannot change the result.

It is claimed in the ninth and tenth propositions of defendant's counsel that there is no evidence of any assignment of the $5,000 policy to Mrs. Curtis, or that she ever had any title to that policy, and that the assignments executed by Mr. and Mrs. Curtis to the bank were in all respects legal. I do not take this view upon these questions. It would seem that the bank did not take this view when the assignment of the $5,000 policy was made to it. That policy is made payable to the assured or his assigns; and it was entirely unnecessary for his wife to join with him in making the assignment he did to the company if she was not interested in it.

The complainant avers in the bill, upon information and belief, that George E. Curtis, in May, 1876, assigned the policy for $5,000 to his wife. Mrs. Curtis also, in her answer, admits and affirms the assignment of the large policy to her by her husband; and the bank does not in its answer deny that George E. Curtis assigned the policy to his wife.

It would seem that not only good pleading, but the importance of the matter, should have received some attention in the answer of the defendant bank, if the complainant's averments were not true. If the assignment existed and was good, it constituted an indispensable link in the chain of testimony necessary to extablish the bank's title. Mrs. Curtis testifies that the large policy was assigned and delivered to her by her husband; that afterwards Mr. Curtis kept them for her with his other papers. She stated that she had looked for the assignment, and could not find it; that the assignment was made on the eighteenth day of May, 1876, and that she had a copy of it, which was then put in evidence.

I think the facts herein stated, and the testimony offered, was sufficient proof of the assignment of the large policy to her, and that it was properly received in evidence.

As bearing upon the question of delivery, and sufficiency

·of the proofs and pleadings, I think the wife's case is brought within our own authorities. *Young v. McKee*, 13 Mich. 554; *Shook v. Proctor*, 27 Id. 349, per CHRISTIANCY, C J., 357–361, ·377; *Manley v. Saunders*, Id. 348; *Ellis v. Secor*, 31 Id. 185; *Davis v. Zimmerman*, 40 Id. 24; *Crittenden v. Insurance Co.*, 41 Id. 442 (2 N. W. Rep. 657); *Bostwick v. Mahaffy*, 48 Id. ·342 (12 N. W. Rep. 192); *Thatcher v. St. Andrew's Church*, ·37 Id. 264; *Latham v. Udell*, 38 Id. 238. See, also, *Champion v. Brown*, 6 Johns. Ch. 398; *Neale v. Hagthrop*, 3 Bland, 551; *Booth v. Booth*, 3 Litt. 58; *Mosely v. Garrett*, 1 J. J. Marsh. 212; *Philips v. Green*, 3 A. K. Marsh. 7.

If the assignment to the bank of the $3,000 policy was not ·good, I have no doubt of the validity of the policy as the property of Mrs. Curtis. It was obtained by her, and contains a clause reading as follows:

"And said company do hereby promise and agree to and ·with the said assured, well and truly to pay, or cause to be paid, the sum insured, to the said Alice H. Curtis or assigns, within ninety days after due notice and proof of death of said ·George E. Curtis. And, in case the said assured should die before the decease of said George E. Curtis, then the amount ·of this insurance shall be payable to their children, or to ·their guardians if under age."

Our statutes expressly authorize the policy to be taken in this manner. How. Stat. §§ 4238, 6300, 6301.

The obligation to pay Mrs. Curtis, under the circumstan·ces, is absolute on the part of the company, if the assignment to the bank is not good; and whether such assignment is good or not is to be determined by the laws of this State, where it was made, and is attempted to be enforced. Upon this subject it is unnecessary to discuss the character of Mrs. Curtis' interest under these policies, or either of them, as, in the view I take, she was the lawful owner of the same, both at the time the assignment was made to the bank, and at the time her husband died.

Under the testimony in the case, I think it clearly appears she never knew that she had put her name to the assignments of these policies to the bank, and never assented to the same, or intended so to do; that she never received any consideration therefor; and that the obtaining of her signature to the assignments in the manner in which it was done was a fraud upon Mrs. Curtis' equitable rights in the premises. The assignments as to her were void; and the bank, as against her, obtained no rights therein. What might have been the effect of the transfer under other circumstances it is not for us now to consider. *Reed v. Buys,* 44 Mich. 80 (6 N. W. Rep. 111); *Tabor v. Insurance Co.,* 44 Id. 324 (6 N. W. Rep. 830); *Schlatterer v. Nickodemus,* 51 Id. 625 (17 N. W. Rep. 210); *First National Bank v. Deal,* 55 Id. 592 (22 N. W. Rep. 53); *Gibbs v. Linabury,* 22 Id. 479; *Anderson v. Walter,* 34 Id. 113; *Kenton Insurance Co. v McClellan,* 43 Id. 565 (6 N. W. Rep. 88); *Benson v. Morgan,* 50 Id. 77 (14 N. W. Rep. 705); *Tompkins v. Hollister,* 60 Id. 470 (27 N. W. Rep. 651); *Putnam v. Sullivan,* 4 Mass. 45; *Nance v. Lary,* 5 Ala. 370; *Fay v. Smith,* 1 Allen, 477; *Wade v. Withington,* Id. 561; *Bank v. Bank,* 10 Cush. 488; *Gould v. Seegee,* 5 Duer, 260; *Hall v. Wilson,* 16, Barb. 548; *Barry v. Insurance Co.,* 49 How. Pr. 504; *Loomis v. Ruck,* 14 Abb. Pr. (N. S.) 385; *Eadie v. Slimmon,* 26 N. Y. 9.

I think the decree should be reversed, and a decree entered in this Court in favor of Mrs. Curtis for the amount of the policies, against the complainant, with interest to the date of the commencement of this suit, less the amount paid by the bank to redeem the policies of insurance, also the amount of any premiums paid upon said policies, or either of them, with interest from the time of payment to the time of the commencement of this suit, which should be paid to the bank; and that Mrs. Curtis should recover her costs in both courts against the bank, to be taxed by the clerk of this Court; and that the register of the court below be directed

to make payment accordingly, in accordance with the terms of the decree to be entered here.

MORSE and CAMPBELL, JJ., concurred. CHAMPLIN, J., did not sit.