GARRISON *v.* UNION TRUST CO.

1. GIFTS—PERSONAL PROPERTY—TRANSFER OF TITLE.

To constitute a valid gift *inter vivos* there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately and fully executed by a delivery of the property by the donor and an acceptance thereof by the donee.

2. SAME—CONDITIONS.

That deceased gave plaintiff a ring, which she delivered and he accepted, that she requested that he let her wear it until she died, and he consented, warranted a finding that plaintiff had title to the ring.

3. SAME—POSSESSION—TITLE.

Possession of the ring by the donor until her death, is not conclusive that she did not intend a gift.

4. SAME—EVIDENCE—ADMISSIONS.

Declarations and admissions of a decedent that she had made a gift of her ring to plaintiff are admissible as corroborative evidence of her intent.

5. SAME—INSTRUCTIONS TO JURY.

Defendant was not entitled to have the jury instructed that if plaintiff was not to have the ring until the death of the donor, and she should meanwhile have the use of it, the gift was not valid.

Error to Wayne; Murphy, J. Submitted October 13, 1910. (Docket No. 57.) Decided February 1, 1910.

Replevin by James H. Garrison against the Union Trust Company, special administrator of the estate of Kittie Levering, deceased, for a diamond ring. Judgment for plaintiff. Defendant brings error. Affirmed.

*Devine & Snyder*, for appellant.

*Davis & Bromley*, for appellee.

BIRD, J. The plaintiff, James H. Garrison, commenced an action of replevin against the defendant, as special administrator of the estate of Kittie Levering, deceased, to recover possession of a diamond ring, to which he claimed title by gift. His title was contested by the defendant, and the issue was determined by a jury in favor of the plaintiff. Defendant asks this court to reverse the judgment of the trial court for several reasons, chief of which is that the court erred in refusing to direct a verdict for the defendant. It was the claim of plaintiff that Kittie Levering gave him the ring while he and his wife were on a visit to her home in Detroit, on February 6, 1905. It was Mrs. Garrison's birthday, and Mrs. Levering invited other relatives to dinner that evening. It is claimed that while at dinner Mrs. Levering gave him the ring. All the invited guests, save plaintiff, testified as to what was said and done with reference to the ring.

In determining whether the trial court was in error in refusing to direct a verdict for the defendant, it will be necessary to review briefly the testimony of those present on that occasion.

Mamie Garrison, the wife of the plaintiff, testified that:

"While we were playing cards, we had our hands on the table, and she spoke up and she says: 'Well, Jim, we have all got on rings but you. Where is yours?' And he says, 'Well, I have not got any just now, Aunt Kittie,' and she says, 'How would you like to wear one like this?' He says, 'I think it is pretty fine,' and she says, handing—she took it off and handed it to him, and she says, 'Try it on,' and she says, 'I will give you this ring, Jim.' She says, 'It was a diamond that was in the stud that my husband, Harry, wore in the front of his shirt.' And Jim then says: 'Oh, thank you, Aunt Kittie; that is awfully nice.' And he slipped it on, and he says, 'It don't quite fit,' and she says, 'You can easily have that fixed, made larger.' And he says: 'Oh, yes; I can. I have got a cousin in the jewelry business, that is an expert, I think, at doing such things as that.' And he says, 'I will appreciate it highly, Aunt Kittie, and

shall always enjoy wearing it, and I am very thankful to you.' And she says, 'Jim let me take it and wear it till I am through with it, but the ring is yours.' So he handed it back to her, and she put it on her finger, and ever afterwards she spoke of it as Jim's ring—'this is the ring I gave Jim.'"

This testimony was corroborated by Seely Wolfe, a nephew of Mrs. Levering.

The following is the testimony of Della Wolfe, a niece of Mrs Levering, who testified to subsequent statements of Mrs. Levering that she had given the ring to plaintiff:

"This was Christmas Day, 1908, that we were at my aunt's for a Christmas dinner, and I was Santa Claus, distributing the presents, and she said—we were all looking at our presents, after we got them—and she says, 'I didn't give anybody any Christmas presents this year because I was not able to get it,' and she turned to my brother-in-law, and she says, 'You have not forgotten I gave you this ring?' and he says: 'No, auntie; I have not.' And she says, 'Well, it won't be long before you have it.'"

Mary E. Wolfe, a sister of Mrs. Levering, was present on this occasion. She gave testimony to the same effect as the foregoing.

Charles Fuller, a neighbor of plaintiff, ate his Christmas dinner at plaintiff's house in 1907. Mrs. Levering was also present, and made statements to him with reference to her having given the ring to plaintiff, as follows:

" I think she spoke directly to me. I had on a ring, and I went out in the dining room and kitchen to smoke before dinner, and Mrs. Levering was there. She and Mr. Garrison were talking out there, and she says, 'Here is the ring I gave Jim,' and pointed to the ring on her finger, in comparison with mine."

To constitute a valid gift *inter vivos*, there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately, and fully executed by a delivery of the property by the donor and an acceptance thereof by the donee. 14 Am. & Eng.

Enc. Law (2d Ed.), p. 1015. In the foregoing testimony, every necessary element to constitute a valid gift *inter vivos* can be found. There is testimony that the deceased intended to and did give plaintiff the ring; that she delivered it to him and that he accepted it; and that afterwards she borrowed, or, as one witness said, she loaned it to wear until she was done with it. This testimony, if believed by the jury, would justify them in finding that the title to the ring was in plaintiff.

Counsel insists that, because the donor had the ring in her possession until her death, that fact shows conclusively that she intended no gift. After the gift was once completed and the title had passed to the plaintiff, he could loan it to her or to any one else without affecting the validity of the gift. *Gannon* v. *McGuire*, 160 N. Y. 476 (55 N. E. 7, 73 Am. St. Rep. 694); *Ivey's Adm'r* v. *Owens*, 28 Ala. 641; *Conner* v. *Hull*, 36 Miss. 424; *Clinton* v. *McKeown*, 39 S. C. 21 (17 S. E. 504); *Whitford* v. *Horn*, 18 Kan. 455; *Crittenden* v. *Insurance Co.*, 41 Mich. 442 (2 N. W. 657); *Mutual Benefit Life Ins. Co.* v. *Savings Bank*, 68 Mich. 131 (35 N. W. 853).

In *Whitford* v. *Horn*, *supra*, the facts were very similar to the one under consideration. One Nicklison gave a watch to a girl about 12 years of age and delivered it to her. She afterward returned it to him to keep until she was older. Nicklison had the possession of the watch when he died, and in a contest between his administrator and the girl it was decided that it was a valid gift. In *Ivey's Adm'r* v. *Owens*, *supra*, where the donor repossessed himself of the gift until the donee was older, the court said:

"Although an actual delivery is indispensable to effect a parol gift, yet it is not necessary that the actual possession should be afterward retained by the donee. Subsequent possession by the donor is not necessarily incompatible with the donee's dominion over the property; nor is it conclusive evidence that there was no delivery, or that the dominion did not pass to the donee."

It would undoubtedly call for an explanation where the custody of the thing given had been retained by the donor, and such fact might be taken into consideration in determining whether a valid gift had been consummated, but it would not necessarily raise a conclusive presumption. *Gannon* v. *McGuire, supra.*

It is assigned as error that the trial court admitted the testimony of the witnesses Della and Mary Wolfe and Charles Fuller, who testified to admissions of Mrs. Levering that she had given the ring to plaintiff. Counsel say that this testimony was incompetent because declarations and admissions of the donor are not sufficient to establish a valid gift, and cite *Campbell* v. *Sech,* 155 Mich. 638 (119 N. W. 922). That case so holds, but it also holds that such declarations and admissions are admissible as corroborative evidence. It was for this purpose that the testimony of these witnesses was used, and we see no error in its admission. *Harris* v. *Hopkins,* 43 Mich. 272 (5 N. W. 318, 38 Am. Rep. 180).

Defendant's counsel complain because the court refused to give their five requests to charge. We think the general charge of the court fairly covered requests 1, 2, 3, and 4. The fifth request was refused, and properly so. It was as follows:

" If you find from the evidence that Mr. Garrison was not to have the ring until after Mrs. Levering's death, and that she was to have the use of it in the meantime, then there was no such unconditional passing of title as the law requires, and the gift is not valid, and your verdict must be for the defendant."

This request assumed that, if the donor had the custody of the ring until her death, there could be no valid gift. This is not the law. As we have before said, if the gift was complete and title passed to the plaintiff, he could permit her to have the custody until her death, without affecting his title in any way.

The testimony clearly presented a question of fact for the jury. The trial court submitted the questions to

them with a very lucid charge of the law applicable thereto and explained to them fully what they must find before they could determine that the title was in plaintiff. We think there was no error in the charge.

We have examined the other assignments of error, but find no reversible error in them.

The judgment of the trial court will be affirmed, with costs of both courts.

OSTRANDER, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.