MENARD *v.* CAMPBELL.

1. WILLS—HEIRS—CONVEYANCES—DEVISE.

A devise to a person for life with remainder over to his heirs does not convey a title to the devisee in fee simple, since the rule of "Shelley's Case" is abolished in Michigan: 3 Comp. Laws, § 8810 (4 How. Stat. [2d Ed.] § 10650); the heirs derive title from the testatrix through the will.

2. SAME—DEEDS.

The word heirs has a technical meaning, and as such describes those who succeed to the ownership of real estate upon the death of the owner.

3. SAME—HUSBAND AND WIFE—ESTATES OF DECEDENTS.

Where, by statute, a married woman takes an absolute interest in the real estate of the deceased husband, the word heirs, as employed in a will, properly includes the widow.

4. SAME—MARRIAGE.

Where no intention appeared on the part of the testatrix to build up an estate in her family, and the will provided for an early final disposition of her estate by sale or absolute devise, except certain property to her sons for life, a devise of a life estate to one son and at his decease to the heirs surviving him in equal shares, vested title in his widow and a surviving child after his death, in equal shares.

5. ESTOPPEL—DEEDS—HUSBAND AND WIFE.

Since a married woman is not held liable on her covenants in a deed executed by herself and husband, in the absence of statutory provisions creating such liability, the wife was not estopped by a joint deed of conveyance with full warranties executed by herself and husband, so as to cut off the estate thereafter vesting in her under the will of the testatrix, and without testimony tending to disclose her purpose in joining in the conveyance, or that the consideration was paid to her, the signature of the wife was a nullity.

Appeal from Chippewa; Fead, J. Submitted April 15, 1914. (Docket No. 42.) Decided June 1, 1914.

Bill by Eugene Menard as executor of the estate of Harriet Lauzon, deceased, against Louise Nault Campbell for the construction of the will of decedent. From a decree for defendant, complainant appeals. Affirmed.

*Warner & Sullivan,* for complainant.

*M. M. Larmonth,* for defendant.

KUHN, J. The bill of complaint in this case is filed to obtain a construction of a clause in the will of Harriet Nault Lauzon, who died at Sault Ste. Marie, in this State, on the 28th day of June, 1897. The will,

which was dated on the 21st day of April, 1897, contained the following clause:

"*Sixth:* I give, devise and bequeath to my beloved son, Joseph Honore Nault, and his heirs surviving him, as follows: To said Joseph Honore Nault the right to improve, let, or use and occupy as a home during his natural life, all that part of private land claim number 110 in said Sault Ste. Marie, Michigan, lying north of Portage avenue south of the water line of St. Mary's river and west of a line drawn parallel with the west line of Sova street and 96 feet distant west therefrom, and at his decease to his heirs surviving, the absolute title in fee to said premises, share and share alike."

Joseph Honore Nault, who was unmarried at the death of his mother, subsequently married. He died September 3, 1911, leaving surviving him his widow and one child, Genevieve H. Nault. On May 16, 1906, Joseph Honore Nault made a lease of the lands in question to the Union Carbide Company for 75 years; but the lease also provided that it was to terminate at his death. On the same day he made an absolute conveyance thereof by warranty deed to the same party, and in this conveyance Louise Nault joined as his wife. The complainant was appointed administrator of the estate of Joseph Honore Nault, deceased, and also guardian of the person and estate of Genevieve H. Nault, the said minor child. The complainant was authorized by the probate court to sell the property in question, which he did, for the sum of $6,000. While this proceeding was pending in the probate court, the defendant claimed to be an heir at law of Joseph Honore Nault, deceased, and entitled, under the clause of the will above set forth, to one-half of the proceeds of the sale of said lands. This suit was brought to determine the merits of this claim, and the circuit judge made a decree in favor of the defendant. Complainant appeals. The question therefore is: Is the defendant, or was she at the

time of his death, an heir at law of Joseph Honore Nault, her husband, and, also, if she was, did she convey her prospective interest in the lands by the deed of May 16, 1906? The defendant contends that she became an heir at law by virtue of Act No. 286 of the Public Acts of 1909, which provides, in part, as follows:

"SECTION 1. When any person shall die seised of any lands, tenements or hereditaments, or of any right thereto, or entitled to any interest therein in fee simple, or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts, in the following manner:

"*First.* One-third to his widow and the remaining two-thirds to his issue, and if he leaves no widow then the whole thereof to his issue, and if all the said issue are in the same degree of kindred to the intestate, they shall share the estate equally, otherwise they shall take according to the right of representation;

"*Second.* If the intestate shall leave a husband or widow and no issue, one-half of the estate of such intestate shall descend to such husband or widow and the remainder to the father and mother of the intestate in equal shares, and if there be but one of the parents living, then to the survivor alone; and if the intestate shall leave no issue, husband or widow, his or her estate shall descend to the father and mother in equal shares, and if there be but one of the parents living, then to the survivor alone; and if the intestate shall leave no issue, father or mother, his or her estate shall descend, subject to the provisions herein made for the widow or husband, if a widow or husband survive the deceased, to his or her brothers and sisters and the children of deceased brothers and sisters, and if such persons are in the same degree of kindred to the intestate, they shall take equally, otherwise they shall take by right of representation: *Provided, however*, if such intestate shall die under the age of twenty-one years and not having been married, all the estate that came to such intestate by inheritance from a parent, which has not been lawfully disposed of, shall descend to the other children and the issue

of deceased children of the same parent, if there be such children or issue, and if such persons are in the same degree of kindred to said intestate they shall take equally, otherwise they shall take by right of representation."

The claims of the complainant are stated as follows:

"That Act 286 of the Public Acts of 1909 does not operate to make the widow an heir of Joseph Honore Nault for the reason that, under said act, the widow becomes an heir only when the husband dies seised of lands or an interest therein in fee simple or for the life of another; that such was not the instant case, because Joseph Honore Nault had merely a life estate in the premises, and, because of the lease and the conveyance given by him to the Union Carbide Company, he had conveyed his whole estate, and had no interest whatever in the property at the time of his death. That it appears from the will that the testatrix intended the estate to inure to the benefit of her immediate family only."

The circuit judge has given us the benefit of a written opinion, which states his conclusions as to these questions, and with which we agree. We therefore incorporate them as a part of this opinion:

"By virtue of the provisions of section 8810, Comp. Laws 1897 (4 How. Stat. [2d Ed.] § 10650), abolishing the rule in *Shelley's Case*, the word 'heirs' as used in the will is a word of purchase to designate the persons who are to take the estate upon the death of the life tenant. It is not a word of limitation to define the estate. The heirs do not take by inheritance from Joseph Honore Nault, nor do they acquire any title through or by virtue of his right of possession. Their title is derived entirely from the testatrix by virtue of the provisions of the will. Consequently the disposition made by Joseph Honore Nault of his life estate becomes unimportant.

"The will expressly defines the estate to be taken, a remainder over after an estate for life, and designates the persons who are to take the remainder, but by a generic term. It requires no construction to

ascertain the estate. It requires construction only to determine the particular persons who belong to the designated class. Who are the heirs of Joseph Honore Nault, surviving him?

"It is assumed by both the parties hereto that the heirs of Joseph Honore Nault must be ascertained as of the time of his death, rather than of the time of the death of the testatrix. This assumption is in accordance with both the principles of law and the intent of the testatrix as expressed in the will.

"The word 'heirs' has a technical meaning, and as such it describes those who succeed to one's ownership of real estate on his death. *Fullagar* v. *Stockdale,* 138 Mich. 367 [101 N. W. 576]; 2 Blackstone's Comm. 201 (Cooley's); *Bailey* v. *Bailey,* 25 Mich. 188.

"Where by statute, the husband or wife takes an absolute interest in the estate of the deceased consort, they come within the technical definition of 'heirs.' 40 Cyc. p. 1463; *Turner* v. *Burr,* 141 Mich. 111 [104 N. W. 379]; *Proctor* v. *Clark* [154 Mass. 45, 27 N. E. 673], 12 L. R. A. 721.

"When the words, 'heir,' 'heirs,' 'unlawful heirs,' or the like are clearly used, not to define the estate given, but to designate the persons who are to take, whether heirs of the testator or of some other person, they mean the person or persons who would by law succeed to the real estate of the person named if he had died intestate, unless an intention to express a different meaning appears from the context of the will and the circumstances of the case. Rood on Wills, § 449.

"The statute of descent (Act 286, *supra*) designates the defendant and the child as the persons who would be entitled to succeed to any real estate, or interest therein, of which Joseph Honore Nault might die seised, in the absence of devise, and are therefore his 'heirs.' They are the persons who come within the class mentioned in the will, and are therefore entitled to the property in question, unless, from the will, it appears that such was not the intention of the testatrix.

"In construing the will, to ascertain the intent of the testatrix, the language of the will must govern.

"The intent is to be gathered from the language

used, for the object of construction is not to ascertain the presumed or supposed, but the expressed, intention of the testator; that is, the meaning which the words of the will, correctly interpreted, convey.' *Allison* v. *Allison* [101 Va. 543, 44 S. E. 906], 63 L. R. A. 924.

"A will cannot be construed by mere conjecture as to the intention of the testator; but it is the intention which the testator expresses in his will that controls, and not that which he may have had in his mind. 40 Cyc. p. 1389.

"The plain intent of the testator as evinced by the language of the will must prevail. The intent must be gathered from the 'four corners of the instrument.' *Wales* v. *Templeton,* 83 Mich. 179 [47 N. W. 238].

"A careful examination of the will has failed to reveal to me the expression of any intention on the part of the testatrix that her property should inure to the benefit of her immediate family, to the exclusion of any of the legal heirs of Joseph Honore Nault.

"If we assume that the testatrix reviewed the then existing provisions of law relative to the descent of property and the determination of 'heirs,' and considered the different situations which might exist at the death of Joseph Honore Nault, we must conclude she knew that, in the event of his death married, but without issue, the widow and his brothers and sisters would be his heirs. By the use of the term 'heirs surviving,' the testatrix then must have known and intended that the widow of her son should, under such circumstances, take part of the property.

"If, on the other hand, we assume that the testatrix had in mind only the situation as it now exists, in order to hold that she intended to give all the property to the child, and to exclude the widow, it is necessary to apply some rule of construction or discover some language in the will which would warrant us in finding that she intended the 'heirs surviving' should be ascertained by the facts as they might exist at the time of the execution of the will or of the testatrix's death.

"I know of no rule which would justify such a construction, nor can I discover any language in the will which points to such an intention. The construction to be given, in my judgment, is that both the fact and

the law as they existed at the time of the death of Joseph Honore Nault must control in determining his 'heirs surviving.' *Lincoln* v. *Perry* [149 Mass. 368, 21 N. E. 671], 4 L. R. A. 215; *Gray* v. *Whittemore, supra* [192 Mass. 367, 78 N. E. 422, 10 L. R. A. (N. S.) 1143, 116 Am. St. Rep. 246].

"This ruling, moreover, appears to be in full accord with intention of the testatrix as it may be gathered from the will.

"There is no indication of a desire to build up a landed property in the family. The will provides for the early final disposition of the entire estate, either by sale or absolute devise, except the descriptions in which the sons take their respective life estates.

"After providing for the support of her mother, and for her grandchildren in being, the testatrix divides the rest of her estate among her four children, the three sons and one daughter. While the value of the particular descriptions of land specifically devised does not appear, the whole tenor of the will indicates that it was the intention to give the children equal portions.

"She placed no restraint of alienation upon the estate given the daughter. By making him an executor and trustee under the will, the testatrix evinces confidence in the integrity and ability of her daughter's husband, which doubtless accounts for the absolute devise and bequest to the daughter, in whose hands, under the counsel and management of the husband, the mother felt that the property would be conserved.

"The unqualified disposition of the entire estate, except the life interests given the sons, and the unhindered devise to the daughter, would appear to negative the idea that the testatrix wished to keep the property in the immediate family, to the exclusion of any legal heir.

"For some reason, however, the testatrix deemed it expedient to restrict the control of the sons over their portions. The provision relative to their receiving only the income, or part of it, of their shares of the residue of the estate for ten years, and the one regarding the possibility of their not paying the taxes and insurance premiums on the property in which they had life estates, would seem to indicate that she

did not have full confidence in their business ability, experience, or providence.

"In the event of the death of a son before the expiration of the ten-year period, his share of the residue, then converted into money, was to go to his heirs. The remainder over after the expiration of the life estate was to go to his heirs. In neither instance is there the expression of any restriction as to whom such heirs should be.

"It was the evident purpose of the testatrix to divide her estate equitably among her four children; but she felt it necessary to restrict the power of each of the sons to dispose of his share, not with the idea of keeping the property in the immediate family, but to insure those dependent, or who might become dependent, upon such son, an estate undissipated by incompetence, improvidence, or inexperience. And in the meantime the son should have full use of the property as though he were the sole owner.

"It therefore appears, and is so determined, that the defendant is an heir of Joseph Honore Nault, and as such heir is entitled to one-half interest in the property in issue. As such property has been sold under agreement of parties, this determination shall apply to the proceeds of such sale."

Did the future interest of the wife pass by way of estoppel under the warranty deed of May 16, 1906? This doctrine of estoppel has been applied in certain jurisdictions where a married woman joins her husband in the execution of a warranty deed and afterwards acquires a title through a foreclosure sale of a mortgage existing at the time of the conveyance (*George* v. *Brandon*, 214 Pa. 623 [64 N. W. 371]; *Sandwich Manfg. Co.* v. *Zellmer*, 48 Minn. 408 [51 N. W. 379]); but the general rule is that a married woman is not liable on her covenants in a deed or mortgage made jointly by herself and husband, in the absence of a statute imposing such a liability (note to *Wadkins* v. *Watson*, 22 L. R. A. 779). In this State we have no such statute, and the rule has been repeatedly stated that the married woman's act

of 1855 confers upon the wife power only to contract and bind herself in relation to her property and estate already possessed, or referring to it, or in relation to property to be acquired by the contract, or in consideration of it. *Johnson* v. *Sutherland*, 39 Mich. 579; *Kenton Insurance Co.* v. *McClellan*, 43 Mich. 564 (6 N. W. 88); *Reed* v. *Buys*, 44 Mich. 80 (6 N. W. 111); *Naylor* v. *Minock*, 96 Mich. 182 (55 N. W. 664, 35 Am. St. Rep. 595); *Edison* v. *Babka*, 111 Mich. 235 (69 N. W. 499). See, also, note to *Mosher* v. *Kittle*, 101 Mich. 345 (59 N. W. 497), for compilation of cases on contracts of married women. In *Arthur* v. *Caverly*, 98 Mich. 82 (56 N. W. 1102), it was held that a married woman uniting with her husband in a warranty deed of his property is liable on the covenant when she obtains all the consideration, which, in that case, was a conveyance to her of other property. The record in the instant case does not disclose for what purpose the wife signed the deed, as she had no dower interest; the husband's interest being simply a life estate. The burden was upon the complainant to show for what purpose she joined in the instrument, and to prove it clearly, and to show that she had brought herself within the rule above set forth. *Mutual Benefit Life Ins. Co.* v. *Savings Bank*, 68 Mich. 116 (35 N. W. 853). This complainant has failed to do, and it necessarily follows that the wife's signature to the instrument was a nullity, and did not bind her subsequently acquired estate.

The decree of the court below is affirmed; but, as this is an amicable proceeding, it having been deemed imperative that this court should construe the will and direct the distribution of the estate so as to protect complainant and the interests of his ward, no costs will be allowed to either party.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.