THOMAS H. BRODHEAD AND ELIZABETH S. BRODHEAD, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29391, 29392.   Promulgated July 7, 1952.

*Milton Cades, Esq.,* and *Urban E. Wild, Esq.,* for the petitioners.
*Charles W. Nyquist, Esq.,* for the respondent.

728

732

OPINION.

ARUNDELL, *Judge:* The respondent has determined, as set forth in the notices of deficiency, that "the T. H. Brodhead Company, (Ace Distributors in 1948) an alleged partnership * * * is not a valid partnership for Federal income tax purposes" with the consequence

that all of the income from such partnership is taxable to the petitioners. This determination is assigned as error.

An alleged error concerning a deduction for legal fees for the year 1943 has been abandoned by the petitioners.

While the pleadings are directed to the question of the validity of the special partnership, the parties argue not only that question but also that of whether the income reported by the trusts is taxable to the petitioners under the rationale of *Helvering* v. *Clifford*, 309 U. S. 331.

### The Partnership Question.

It is our opinion, and we so hold, that the successive trusts were bona fide partners in the partnership of T. H. Brodhead Co. (the name of which was changed in 1947 to Ace Distributors).

The ultimate factual question in the tax treatment of family arrangements in the form of partnerships is "whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." *Commissioner* v. *Culbertson*, 337 U. S. 733. The evidence satisfies us that in forming the partnership the parties were acting in good faith and with a business purpose. There is no doubt that Thomas H. Brodhead was genuinely concerned about the possibility of his death, which event would have affected his one-man business. The welfare of his family was tied in with the degree of success of the business. In order to insure, as far as possible, that neither would suffer in the event of his untimely death, the partnership was formed. There was a business purpose in bringing in Glueck and the trust company as a special partner. Glueck had been Brodhead's business advisor, and an employee in the business. In those capacities he had a good grasp of the various aspects of the business and was in a position to carry it on if that became necessary. Brodhead wanted the trust company as a participant because of its broad experience in the management of businesses and for the advice that it could give in the operation of a rapidly expanding business. While a special partner cannot transact the business of the partnership, it may at all times investigate partnership affairs and advise the partners as to management.[1] The parties did join together in the present conduct of the enterprise theretofore conducted by Brodhead alone. Brodhead irrevocably parted with a 50 per cent interest in the net assets of the business, and with 50 per cent of the profits of the business after compensation for his services.

· Capital was a material income-producing factor in the business of the partnership. The contribution made by each of the trusts was capital—as distinguished from services. The fact that it was gift

[1] Revised Laws of Hawaii, 1935, as amended, ch. 225, sec. 6881.

capital which originated with the petitioners does not preclude recognition of it as a genuine capital contribution where the facts indicate "that the amount thus contributed and the income therefrom should be considered the property of the donee for tax, as well as general law, purposes. * * * Whether he [the donee] is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise." *Commissioner* v. *Culbertson, supra; Theodore D. Stern,* 15 T. C. 521.

The respondent contends against the recognition of the trusts as partners because of the settlors' control over corpus and income. Corpus was required to be paid into the business of which Brodhead was the manager. Distributable income was what was left after Brodhead took out his salary. We do not see wherein these factors should serve to operate against recognition of the trusts as partners, at least in the absence of any abuse by Brodhead of his discretion in his handling of corpus or income. Trusts normally provide for some degree of control over corpus and/or income by someone other than the beneficiary. If they did not, the transfer would result in an outright gift rather than the creation of a trust.[2] The queston of the tax effect of retained control is one of degree, as is true of many questions in the law. " 'Drawing the line' is a recurrent difficulty in those fields of the law where differences in degree produce ultimate differences in kind." *Harrison* v. *Schaffner,* 312 U. S. 579. The question of where to draw the line as to the permissible degree of control which will shift tax liability is of particular concern where income is produced by property rather than by services. In such cases, the tax liability attaches to ownership. *Poe* v. *Seaborn,* 282 U. S. 101; *Hoeper* v. *Tax Commission,* 284 U. S. 206. A beneficiary of a trust may assign a share of the trust income to another for life without retention of any form of control, and such assignment is treated as a transfer *in praesenti* of a life interest in the trust corpus with income taxable to the donee. *Blair* v. *Commissioner,* 300 U. S. 5. One step removed from such complete assignment is the assignment of trust income for a limited period. In such a case, the gift of the income "for the period of a day, a month or a year involves no such substantial disposition of the trust property as to camouflage the reality" that the assignor continues to enjoy the benefit of the trust income. *Harrison* v. *Schaffner, supra.* Still further removed are situations like those involved in *Helvering* v. *Clifford, supra,* where the owner of property places it in trust for a relatively short term, with himself as trustee, retains broad powers of management and over distribution of income, with a reversion to the grantor. A gift in trust for the bene-

---

[2] In the case of an *inter vivos* trust where the settlor retains power to control the trustee in some respects in the administration of the trust, the settlor is ordinarily under a fiduciary duty to the beneficiary in respect to the exercise of the power. Scott, The Law of Trusts, sec. 185.

fit of another, but with reserved power to modify or revoke, results in taxation of the trust income to the settlor. This is on the ground that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers*, 281 U. S. 376.

The attribution of income from property to the owner of the property was emphasized by the tax committees of the House of Representatives and of the Senate in their consideration of the family partnership provisions that became section 340 of the Revenue Act of 1951.[3] It was the expressed view of the committees that partnership income, where capital is a material income-producing factor, should be taxed to the partners if they were the real owners of their interests regardless of how the interests may have been acquired.

While purported intra-family gifts may be mere shams, not every restriction upon unfettered control is to be regarded as indicative of sham in the transaction. Lack of true ownership in the transferee is not necessarily indicated by powers retained by the transferor as a managing partner or in any other fiduciary capacity when considered in the light of all of the circumstances.[4]

The family partnership provisions enacted as section 340 of the Revenue Act of 1951 are not retroactive to the years involved in these proceedings. Nevertheless, the basic principle of taxing income from property to the owner of the property was the law in the earlier years as fully as it is today. A proper appraisal of the evidence is convincing that the trusts in these proceedings were the owners of the property held by them. Petitioner T. H. Brodhead irrevocably parted with a 50 per cent interest in his business property when he created the first trust. The second trust became the owner of that interest by purchase. The corpus has not reverted to him, and it cannot. The income has not been used for the benefit of the settlors but is held intact for the beneficiaries. Such powers as Brodhead had over the corpus by use in his business were no more than those of a managing partner, and in the exercise thereof he was required to act in a fiduciary capacity. After a gift is once complete and title has passed to the donee, the fact that the donor subsequently has

---

[3] H. Rept. No. 586, 82d Cong., 1st Sess.; 1951-2 C. B. 357, 380. The Senate Finance Committee issued a report in the same language as the Ways and Means Committee Report. See S. Rept. No. 781, 82d Cong., 1st Sess.; 1951-2 C. B. 458, 485.

[4] "Not every restriction upon the complete and unfettered control by the donee of the property donated will be indicative of sham in the transaction. Contractual restrictions may be of the character incident to the normal relationships among partners. Substantial powers may be retained by the transferor as a managing partner or in any other fiduciary capacity which, when considered in the light of all the circumstances, will not indicate any lack of true ownership in the transferee. In weighing the effect of a retention of any power upon the bona fides of a purported gift or sale, a power exercisable for the benefit of others must be distinguished from a power vested in the transferor for his own benefit." (H. Rept. No. 586, *supra*.)

possession of it does not affect its validity. *Garrison v. Union Trust Co.*, 164 Mich. 345, 129 N. W. 691; *Adams v. Hagerott*, 34 F. 2d 899.

This is not a case like *Ralph C. Hitchcock*, 12 T. C. 22, where a father purported to make gifts to minor children of interests in his business, had himself appointed guardian, and charged their purported distributive shares with the cost of their board and keep. Here we have independent trustees who received the full distributive share of the trusts for the benefit of the children.

We fail to see wherein the restrictions on the limited partner were such as to invalidate the partnership. The prohibition against transaction of partnership business by the special partner is a normal provision of limited partnership agreements, and in fact is usually provided for by law where limited partnerships are recognized. See *Theodore D. Stern*, *supra*, where we said that retained control in the general partner "is of no particular significance since limited partners normally have no part in the control or management of the business." 15 T. C. at p. 527.

No question is raised in these proceedings as to whether under the laws of Hawaii a trust may be a member of a special partnership. Neither the statutes of Hawaii nor Internal Revenue Code section 2797 prohibits a trust from being a partner, and we have recognized that trusts can be members of partnerships. See *Louis R. Eisenmann*, 17 T. C. 1426, and *Theodore D. Stern*, *supra*. See also *Greenberger v. Commissioner*, 177 F. 2d 990.

### The "Clifford" Case.

We hold that the decision in the case of *Helvering v. Clifford*, *supra*, is not controlling in these cases. The factual differences are so great as to obviate any need for extended discussion. Here we have long term trusts—the first was to continue until 20 years after the death of the settlor, and the second until the youngest beneficiary attained the age of 33 years. The settlors in these proceedings were not the trustees. They had no discretion as to distribution of income. There could be no reversion of corpus to the settlors.

The respondent makes an argument that the petitioner Thomas H. Brodhead could control the amount of income of the trusts through siphoning off partnership income as compensation for his services. There is no indication that the compensation of Brodhead was more than a reasonable sum for services rendered. Moreover, any compensation taken by him in excess of a reasonable amount would be inconsistent with the purpose for which the respondent charges the trusts and partnership were created, namely, to avoid taxation of income of the business to Brodhead. Also, we have here independent trustees who had available and who, it must be assumed, would use means of preventing the general partner from depriving the trustees'

wards of their rightful share of partnership income. A partner does not stand only as such in partnership matters; he occupies a fiduciary relationship to the other partners in all partnership matters and the utmost good faith is required of each in their relations to each other. 68 C. J. S., Partnership, section 76; *Stem* v. *Warren*, 161 N. Y. S. 247. Here the outcome of the partnership operations, mentioned above, indicates as a practical matter entire good faith on the part of the general partner in his dealings with the special partner which inured to the benefit of the trust beneficiaries.

By amended answer, the respondent invokes the provisions of section 275 (c) of the Internal Revenue Code to avoid the operation of the statute of limitations against assessment for the year 1943. This question would require decision only in the event that the trust-partnership income were properly taxable to the petitioners, and if that income were in excess of 25 per cent of reported gross income. As we have held that such income was not income of the petitioners, we do not decide the limitations issue.

*Decisions will be entered under Rule 50.*